**SHABINO v. DOLESE BROS. CO. et al.**

No 25659.   Sept. 10, 1935.

Rehearing Denied Oct. 8, 1935.

Wm. L. McCann and Albert D. Lynn, for plaintiff in error.

Tomerlin, Chandler & Shelton and Gomer Smith, for defendants in error.

PER CURIAM. The plaintiff, Olive M. Shabino, brought this suit in her own behalf and in behalf of the children of Charles R. Shabino, deceased. However, the action was abandoned as to the claims made in behalf of the oldest son, Charles L. Shabino. The suit grew out of a collision between a Cadillac sedan, being driven by the deceased, and a truck of the Dolese Bros. Company, being driven by the defendant Frank Guiles, as an employee of said Dolese Bros. Company. The accident happened at a point on U. S. Highway No. 66 or 77, between Oklahoma City and Edmond, Okla., at a point on said highway at about the south line of 'what is known as Seventieth street in Ravens Wood Manor, a platted sub-division, located about three miles north of the State Capitol Building in Oklahoma City.

The pleadings and the evidence disclose that Charles R. Shabino was driving south out of Edmond, Okla., on September 28, 1932; that his wife and youngest son were in the car with him; that the road upon which they were traveling is a paved highway 18 feet in width, and that Seventieth street is approximately 450 feet south of an elevation in the highway along which Mr. Shabino was driving; that the road from that point is down grade to and beyond Seventieth street. The record further discloses that Frank Guiles was driving a truck belonging to Dolese Bros. Company, proceeding along the same highway approaching said Seventieth street, from the south, and that the collision occurred on said highway at a point approximately even with the south line of Seventieth street where it intersects said highway. The record discloses, and it is admitted, that Mr. Shabino received injuries in said accident and as the result of said collision, from which on the same date he died at the University Hospital in Oklahoma City.

The plaintiff contends that the collision was due to the negligence of the defendant, Frank Guiles, while operating the said truck for the Dolese Bros. Company, in the course of delivering a load of sand to a customer in the said Ravens Wood Manor and charging such negligence also to said company. The defendants contend that they were without negligence and that the collision was due to the negligence and lack of care on the part of the said Charles R. Shabino and that his negligence and lack of ordinary care proximately caused or contributed to cause the accident complained of. The case was tried to a jury on the 6th, 7th and 8th days of December, 1933, resulting in a verdict and judgment for the defendants. The plaintiff filed a motion for new trial in due course, and the same was, on the 22nd day of December, 1933, overruled, and the case came here on appeal from that order.

The evidence consists of oral testimony of witnesses, photostatic cuts of the car and truck, also' diagrams, measurements and other data reflecting the physical conditions in the highway at the point of collision and explanatory of the testimony as to the location of this intersection with reference to the hill or elevation north thereof. The evidence, including both the testimony of the witnesses and the physical facts and circumstances, seems to have been fully pre-

sented to and considered by the court and the jury. There is a sharp conflict in the testimony upon the vital issues of negligence. It being admitted that Charles R. Shabino, the deceased, died as the result of the injuries received in this collision, the jury was therefore called upon to determine only the issues of negligence and contributory negligence as presented in the petition of the plaintiff and in the answers of the defendants. Plaintiff sets out a number of assignments of error, same being lettered from "(a)" to "(l)."

The first point argued as ground for reversal appears at page 33 of plaintiff's brief. in language as follows:

"The trial court erred in refusing to grant a new trial, when the verdict did not meet the considerate approval of the mind and conscience of the court, and the court was not of the opinion that the verdict was right."

Plaintiff cites a number of authorities in support of this particular ground for reversal of the judgment. A leading case cited is that of Hall v. Polson, 130 Okla. 136, 265 P. 1068. The court in that case reaffirms the rule that:

"It is the duty of the trial court, upon a motion for a new trial which challenges the verdict upon the ground that it is contrary to the evidence, to weigh the evidence and to approve or disapprove the verdict, and, if the verdict is such that in the opinion of the trial court it should not be permitted to stand, and in his opinion should have been for the other party, to grant a new trial."

However, the court in this case makes it clear that that rule may be easily misunderstood and misapplied. In concluding the first syllabus, the court states:

"* * * But this duty of the court does not prevent the trial court from yielding his impression or opinion, and adopting that of the jury, if, upon consideration of the evidence, the court is of the opinion that the verdict is right, and by reason thereof yields his own opinion to that of the jury."

In the body of the opinion the court makes use of this language:

"As we view it, the trend of the decisions of this court has been too broad as applied to motions for new trial in law actions where a jury passes upon disputed facts and where there is a conflict in the evidence; moreover, when such a motion is sustained, we think it far better practice on the part of trial courts to state in the record the ground upon which the court sustains or overrules such a motion."

The motion for new trial in this case was passed on and overruled on December 22, 1933, and the order thereon is embodied in the journal entry shown at pages 427-430 of the case-made. The court's minutes on this order, while not a part of the record, appear on page 481 of the case-made, and merely recite the order overruling the motion, plaintiff's exceptions thereto, and the notice of appeal.

The record upon which the plaintiff relies appears at pages 422-426 in the case-made. and represents an attempt on the part of the plaintiff to constitute the remarks of the court, which were theretofore made in connection with the consideration of the motion for new trial, a part of the record proper, and this proceeding shows to have been signed by the judge on January 4, 1934, and same was then recorded by the direction and in pursuance of the order of the court. Without passing upon the sufficiency of this entry as being a part of the record, we will briefly refer to pertinent parts thereof upon which the plaintiff relies as showing that, in the mind and judgment of the court, the verdict was not sustained by the evidence, and as showing that the court was of the opinion that the verdict was wrong in point of law, under the facts. At page 424 of the record the court used the following language:

"I am willing to admit that if I had been on that jury I wouldn't have agreed to a verdict as they did, but I think the case was fairly submitted. There is a sharp conflict in the testimony, and to my mind there is no doubt but what the truck driver was guilty of negligence. Now, he said he held out his hand. The jury had a right to believe that or disbelieve it. There is no evidence to the contrary except it was not seen. The evidence showed that the car skidded 35 feet, and it had four-wheel brakes, and when it hit the truck—I mean to say that the collision produced considerable force when the two cars came together, and there is no doubt about that. The jury took that into consideration. The evidence here was, by the last witness, or one of the last witnesses, that the automobile knocked that truck 26 feet or 16 feet—I don't remember which—and there was nothing to contradict that under the facts and circumstances. I don't believe it knocked it 26 feet, but the jury may have believed so. But there was 26 ft. from where the truck was struck until it was stopped."

This analysis of the testimony, coupled

with the court's discussion of the function of the jury, is of itself amply sufficient to answer the argument "that the verdict did not meet with the considerate mind and conscience of the court."

The court continued in language as follows:

"The evidence was of such character and such shape that to set the verdict aside, I would have absolutely to invade the province of the jury, and we had just as well have no jury trials if the court is going to set the verdict aside because it doesn't happen to agree with his views. If I had been with the jury and considered the evidence as they did, I might have weighed the evidence differently to what it actually exists in my mind now, but be that as it may, there was a sharp conflict in the testimony and I can't say that the jury did not conscientiously believe as they did, under the law and the evidence, and unless I believed that the jury was influenced by other motives entirely, I could not set the verdict aside."

Counsel for the plaintiff made the following observation to the court:

"If the court please, I understand your Honor overrules the motion?"

—to which the court answered: "Yes, I have got to under this state of facts."

Certainly the court would not feel himself bound to do a thing that was contrary to his sound legal judgment or against his conscience. In fact, this comment, taken as a whole, and it should only be considered in its entirety, discloses quite clearly that the court was of the opinion that the case had been fairly submitted to the jury, and that the jury, as the triers of the facts, had, upon their own conscience and in due course, regularly decided the issues against the plaintiff and for the defendant upon all disputed points in controversy in the case. The trial judge did not err in yielding his personal impressions on the facts to that of the jury, but, on the contrary, his act in doing so, in the circumstances, revealed a trend of judicial mind expressive of the will of the law in the administration of justice in this state.

At another point in the brief plaintiff complains that the court invaded the province of the jury on the issue of contributory negligence in giving section No. 18 of the general instructions. This point will be further considered and attention is now called to it for the purpose of pointing out that the questions of negligence and contributory negligence, particularly the latter, are to be determined by the jury, under the Constitution and laws of this state, and the court in

this case appears to have been mindful of that rule, and, in a splendid judicial drift of mind, acknowledged himself bound thereby and yielded his individual personal opinion as to the weight and sufficiency of the testimony to that of the composite judgment of the several members of the jury, and pursued a course of sound legal discretion consistent with the will of the law rather than to permit his personal impression on portions of the proof to control him in his functioning as a court.

In Federal Surety Co. v. Little, 156 Okla. 75, 9 P. (2d) 447, Mr. Justice Riley, in commenting upon the rule invoked by plaintiff on this point, used a quotation from Justice Sharp in Vickers v. Philip Carey Co., 49 Okla. 231, 151 P. 1023, in the following significant statement:

"Courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law."

The law wills that juries, in law actions, are the triers of the facts, and, while it is the duty of the court to carefully observe and direct the entire proceeding in order to see that the testimony submitted to the jury is competent, that the jury is properly instructed in the law, and that the verdict of the jury is not against the clear weight and substance of the competent testimony, and while it is the court's duty to grant a new trial in case the verdict in the mind and conscience of the court is wrong under the evidence and under the law, yet this does not mean that the judge may or that he should substitute his individual opinion on questions of fact for that of the jury, and thereby constitute himself the trier of the facts. Judicial power should be exercised and expressed so as to carry forward, harmonize and continue the various agencies of justice as created and maintained under and by virtue of the Constitution and laws of this state, so that the will of the law in each given case may be ascertained and expressed in and by the court's final judgment.

In other words, there is no such thing as judicial power, as contradistinguished from the power and will of the law. Such was the rule announced by Chief Justice Marshall in the case of Osborn et al. v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, 234, quoted with approval by this court in Magnolia Petroleum Co. et al. v. McDonald, 168 Okla. 255, 32 P. (2d) 909. This court, in that case, quoting further from Justice Marshall, says:

"Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law."

That seems to have been the theory and motive of the trial judge in this case, and the remarks upon which the assignment is based were mere by-plays or casual remarks of the judge and were quickly set at rest by the positive judicial statement to the effect that the court could not and would not undertake to invade the province of the jury.

A lawsuit is an orderly proceeding. Its conduct is regulated by certain well defined rules. The judge is as much bound by these rules as is the jury. They together function, each in his and their proper sphere, and thus, in an orderly way, justice between men is ascertained and administered.

It follows that the trial court committed no error in yielding his judgment to that of the jury.

Plaintiff also complains· of error in the giving of the 18th section of the court's general instruction to the jury. That instruction appears at pages 414-415 of the case-made and is as follows:

"You are further instructed that you may take into consideration the movement and operation of the car driven by the deceased at and immediately prior to the time of the accident, including the rate of speed and all the other facts and circumstances proven in the case with reference thereto, all of which is a question for you to determine. Under our Constitution the duty is imposed by law upon the jury to determine the facts and circumstances constituting contributory negligence, and you will apply such facts and circumstances as you may find from a preponderance of the evidence, in this behalf, and in accordance with the definition given you in these instructions of contributory negligence. In this connection you are instructed that to drive an automobile in ex-·cess of 45 miles per hour, at the time of the collision complained of, was a violation ·of the laws of this state and would be negligence as a matter of law; but as to whether ·or not such a violation, if any, would constitute contributory negligence in this case, if you should find from a preponderance of the evidence that said automobile was driven at a speed in excess of 45 per hour .at the time or immediately preceding the accident, is solely a question for the jury to determine."

The plaintiff quotes only a portion thereof, while by reading the whole instruction it clearly appears that the court thereby communicates to the jury its exclusive right and duty of passing upon all questions pertaining to the issue of contributory negligence. The jury was thereby directed, for its guidance, to the instruction as a whole. The plaintiff contends that the court erred in that portion of this instruction which tells them:

"That to drive an automobile in excess of 45 miles per hour, at the time of the collision complained of, was a violation of the laws of this state and would be negligence as a matter of law."

Plaintiff cites the case of Midland Valley R. Co. v. White, 109 Okla. 60, 234 P. 762. In that case, the court, after stating the applicable rule on the question of contributory negligence as involving the exercise of reasonable prudence on the part of plaintiff in the circumstances, then said:

"It is error for the court to substitute for this guide a given state of facts as constituting contributory negligence for the guidance of the jury in considering the question of negligence, if any, on the part of the plaintiff."

In the body of the opinion, the court uses this language:

"A given state of facts cannot be made the test, as the conditions and circumstances of each case will be different"

—and concludes as follows:

"If we make the conduct of a reasonably prudent person, as measured by the circumstances and conditions of the particular case, the test, the weight of the rule does not vary in its application. It results in a uniform burden in all cases where the question of contributory negligence is involved."

The court in its 10th instruction tells the jury what contributory negligence is and the plaintiff assents to the correctness of that instruction. The 20th instruction correctly reminds the jury that they are the exclusive judges of the facts, the weight of evidence and the credibility of the witnesses, while in the 21st section of the court's instructions they are admonished as follows:

"You are not at liberty to select any one or more of them less than the whole number and disregard the others, but must consider each instruction as a necessary part of the entire charge."

Thus making the instructions, as a whole, the rule and guide to the jury.

The 18th instruction, of which complaint is made, does not take from the jury the right to determine any question of fact, not even the question of the speed at which the Cadillac car was being driven by the deceased at or just preceding the time of the accident. It merely tells the jury that to drive an automobile in excess of 45 miles per hour at that time would be negligence as a matter of law, not that it was being so driven, nor, if so, that it would amount to contributory negligence in this case, but left these questions for the jury to determine, using language as follows:

"But as to whether or not such a violation, if any, would constitute contributory negligence in this case, if you should find from a preponderance of the evidence that said automobile was driven at a speed in excess of 45 miles per hour at the time or immediately preceding the accident, is solely a question for the jury to determine."

In fact, the opening portion of that instruction reminds the jury that all questions, "including the rate of speed and all the other facts and circumstances proven in the case with reference thereto," are questions for the jury to determine.

While it is error for the trial court to instruct the jury "that if a certain state of facts is found to exist, such facts constitute contributory negligence and the plaintiff cannot recover," yet that rule does not mean that the court may not instruct the jury what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence.

As stated in Hines, Director General of Railroads, v. Dean, 96 Okla. 107, 220 P. 860, cited with approval in the case of St. Louis-San Francisco Ry. Co. v. Tyler, 107 Okla. 240, 232 P. 414:

"In no other manner can the jury be advised as to the relative duties of the parties."

It will be noted that the rule rejects the right of the court to instruct the jury "that if a certain state of facts is found to exist, such facts constitute contributory negligence and the plaintiff cannot recover," yet at the same time it approves the right of the court to instruct the jury "what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence."

In other words, the rule applies both to the plaintiff and the defendant alike, and the court makes the distinction between defining such an act as negligence when committed by either party and defining the same as contributory negligence as applied to this particular case, and so it is with the instructions complained of. By this and the other portions of the court's instructions, the determination of the question of contributory negligence was placed with the jury, where it belongs.

The instructions as a whole fairly present the rights of all parties and no error appears therein.

The plaintiff also discusses the refusal of the court to give her requested instruction No. 16, having reference to the status of the intersection of Seventieth street in Ravens Wood Manor with highway No. 66. This question does not seem to be of any substantial importance in view of our conclusion as to the sufficiency of the testimony to sustain the verdict. Then, too, the court sufficiently submitted this theory of negligence to the jury by section 14 of the general instruction.

As indicated by the trial court, there is a sharp conflict in the testimony offered by the parties in respect to the question of primary negligence and also on the question of contributory negligence. These questions were submitted to the jury, under proper instructions, and the jury returned a verdict for the defendants, and there being sufficient competent testimony to sustain that verdict, this court, in keeping with its well-established rule, will refuse to go behind the same for the purpose of determining questions thus set at rest, in due and regular course of judicial procedure, by the verdict of the jury and the judgment of the trial court thereon.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. C. Austin, Waldo T. Oden, and Ross Rutherford in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and fact was prepared by Mr. Austin and approved by Mr. Oden and Mr. Rutherford, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur.