## OKLAHOMA GAS & ELECTRIC CO. v. BUSHA.

No. 25725. Nov. 10, 1936.

Rehearing Denied March 30, 1937.

Thurman, Bowman & Thurman and Wm. M. Majors, Jr., for plaintiff in error.

Carmon C. Harris and John A. Brett, for defendant in error.

PER CURIAM. This case represents an appeal from the district court of Oklahoma county. It was brought by Abbie D. Busha, for the benefit of herself and children, against the Oklahoma Gas & Electric Company, a corporation, to recover damages for the wrongful death of Busha, resulting from an injury suffered by him in the course of his employment. Judgment was for $15,000. The parties will be referred to as they appear in the lower court.

The following facts are alleged by plaintiff in her first amended petition as the basis of her right to recover: The deceased was an electrician's helper in the employ of defendant company. He was ordered by defendant to go, and went, into a certain room known as the "bus room" at defendant's power plant where he was employed, to see that the painter who was painting therein would not come in contact with any of the electric appliances in the room. While there performing his duties a high voltage of electricity arced from the machinery, equipment, devices, and apparatus in the room and struck his body causing him to be severely burned, and resulting in his death. The "bus room" contained open, exposed and uninsulated electrical appliances and equipment carrying and heavily charged with electricity which made said room a place of extraordinary hazard and danger. Defendant was negligent in failing to provide deceased a reasonably safe place to work, and in failing to use the proper degree of skill required in the manufacture and handling of electricity, and in having in the "bus room" open, exposed and uninsulated electrical appliances and equipment, and in failing to provide safety devices for the protection of deceased, and in failing to cut off the electric current passing through said equipment in said "bus room"; and such negligence was the proximate cause of decedent's death.

The following additional facts and acts of negligence are alleged in plaintiff's second amended petition: On the wall of the "bus room" were oil switches and fuses of various kinds. The voltage of electric current pass-

ing through the equipment in the room was 220 volts for plant lighting and 2,300 volts for power, and portions of said equipment carrying the 2,300 volt current were open and exposed and not insulated. The room was not ventilated and very hot and the paint used by the painter gave off a highly explosive gas. Deceased in the performance of his duties had just cleaned off a shelf located on another wall of the room so that the painter might paint it, when a violent explosion and flash occurred in such a manner that deceased received severe burns from which he died. The electric current had arced and ignited the gas, resulting in said explosion and flash. Defendant had so constructed the "bus room" as to make it a place of great danger and extraordinary hazard, and had failed to reduce the danger and hazard by enclosing and insulating the open, exposed and uninsulated equipment, and in this was negligent. Deceased had no knowledge of the great danger incident to the painting operations in the "bus room," and defendant failed to warn him of same, and in this was negligent; and all the negligence of defendant was the proximate cause of decedent's death.

Defendant's answer was a general denial and a plea of contributory negligence and assumption of risk on the part of the deceased.

The trial resulted in a special finding of the jury that an electric flash or short circuit was the direct and immediate cause of the burns on the body of Oliver Busha which caused his death, and that the electric flash or short circuit was caused by the test lamp being knocked into the panel board in contact with the fuses with the dust rag, accidentally, and in a verdict and judgment for plaintiff.

Before a plaintiff is entitled to recover in this kind of a case, three essential elements must appear: First, the existence of a duty on the part of the master to protect the servant; second, the failure of the master to perform this duty; and, third, injury to the servant resulting from such failure. There is ample evidence in the record in this case to establish all three elements, from which reasonable men might draw different conclusions, and it was proper to submit these three questions, together with the questions of contributory negligence and assumption of risk, to the jury under proper instructions. The jury under proper instructions, by its general verdict, found that the deceased was not guilty of assuming the risk or of contributory negligence. There was no substantial error committed in the admission and exclusion of evidence. It is essential to pass on the following questions raised by this record: (1) Was the general verdict in conflict with the special findings of the jury? (2) Was it reversible error on the part of the court to fail and refuse to include a "foreseen or expected result" clause in its instruction on proximate cause? (3) Was it reversible error on the part of the court to fail and refuse to include in its instruction on burden of proof, a clause that plaintiff shall not be entitled to recover on a conjecture, surmise, speculation or suspicion that decedent's death was due to the alleged negligence of defendant? (4) Was it reversible error on the part of the court to give the instruction given on assumption of risk and to fail to give a different instruction thereon?

1. Was the general verdict in conflict with the special finding of fact of the jury? The jury made a special finding that an electric flash or short circuit was the direct and immediate cause of the burns on the body of deceased which caused his death, and that the electric flash or short circuit was caused by the test lamp being knocked into the panel board in contact with the fuses with the dust rag, accidentally, and returned a general verdict for the plaintiff on which judgment was rendered. Defendant earnestly contends this constitutes a conflict that cannot be reconciled.

The evidence discloses the dimensions of the "bus room" to be about 11'x12' with 8' ceiling. On the south side of the east wall of the room, where the electric current arced, were the 2,300 volt circuit fuses on a panel board referred to in the special finding. On the east side of the south wall was located a shelf on which was kept the test lamp referred to in the special finding. Eli Bunch, the painter who was with deceased when the electric current arced, testified that he was painting the north wall of the room, and deceased was behind him; that he did not look around and did not see deceased or what he was doing; that deceased asked something about painting the shelf and said he was going to clean it off; that he heard deceased dusting with a rag and heard him stop, and in about 30 seconds thereafter the explosion occurred. E. C. Fisher, chief electrician at the plant where the explosion occurred, testified that soon after the explosion he with others examined the "bus room," and in addition to noticing the damaged fuses, they found pieces of a test light with the wire and head from which the

globe and socket had been blown to pieces, and they collected the pieces. All evidence introduced by plaintiff as to the burns received by deceased was to the effect that they were caused by a gas explosion, while all the evidence of defendant as to the burns was to the effect that they were caused by the electric arc or flash-over, and that the explosion heard was the arcing of the electric current and that there was no gas explosion.

As stated in Corpus Juris, vol. 33, at page 1187:

"A motion for a judgment on the special finding of the facts, notwithstanding the general verdict, has no reference whatever to the pleadings in the cause, and proceeds upon the theory that the special finding of facts by the jury is so inconsistent with their general verdict that the former should control the latter and the court should give judgment accordingly."

And at page 1147:

"In determining whether or not the pleadings support the judgment, they must be taken as a whole, and construed so as to support the judgment, if capable of such a construction."

In our opinion plaintiff's pleadings support both the special finding of facts and the general verdict, and they do not conflict. If deceased did not assume the risk and the defendant was negligent, the negligence on the part of defendant consisted in failing to provide a reasonably safe place to work, and in providing a working place with dangers which ordinary care would have eliminated, whether the burns which caused decedent's death were caused by the electric arc or flash-over alone, or in combination with a gas explosion. The general verdict is consistent with the special finding that an electric flash or short circuit was the direct and immediate cause of the burns on the body of deceased which caused his death. If there is any inconsistency or conflict, it is between the special finding and the pleadings, not between the special finding and the verdict. Plaintiff pleads that "a high voltage of electricity arced from the machinery, equipment and apparatus contained within the room and struck the body of the said Oliver Busha, deceased, causing him to be severely burned and resulting in his death;" that "a violent explosion and flash occurred in such manner that the said Oliver Busha was severely burned in and about his entire person and said burns were of such a nature and of such severity that the same produced his death"; that the room was filled with a highly explosive gas, and that the arcing or shorting of said electric current ignited the gas and resulted in said violent explosion and fire. As we have indicated, we think there was no conflict. To invoke the rule contended for by defendant, a general verdict must be in conflict with the special finding without reference to the pleadings. We know of no good reason why defendant should be denied the right to make plaintiff's case. The case-made by plaintiff was good as against a demurrer or motion for a directed verdict.

2. Was it reversible error on the part of the court to fail and refuse to include a "foreseen or expected result" clause in its instruction on proximate cause? The defendant requested the following instruction:

"You are instructed that, even though you should find from the evidence that the defendant failed to perform its duty to Oliver Busha as defined in these instructions, and that such failure was followed by injury to, and death of, Oliver Busha, you cannot return a verdict for the plaintiff in this case unless you find from a perponderance of the evidence that the injury to, and death of, Oliver Busha was the direct and proximate result of the failure of the defendant to perform such duty (and also that the injury to, and death of Oliver Busha was a result which an ordinary person would anticipate as likely to occur on account of such failure)."

In giving this instruction the court omitted therefrom and refused to give that portion contained in the parenthesis. Defendant excepted, and assigns the giving of said instruction and the refusal to give the instruction, as requested, as error.

In Oklahoma Gas & Electric Co. v. Oliphant, 172 Okla. 635, 45 P. (2d) 1077, where the employee, an experienced electrician, in the performance of his duties, was sent to investigate, and repair, if necessary, defects in the lighting system of a patron, and while attempting to make said repairs came in contact with high voltage electricity and was killed and an action was brought for his wrongful death, the court gave the following instruction:

"You are further instructed that to entitle the plaintiff to recover, it is not only necessary that she have established that the defendant was negligent, but she must also have shown to you by a preponderance of the evidence that the negligence alleged in her petition was the proximate cause of the death of said B. F. Oliphant. By proximate cause means that active efficient cause which sets in motion the train of events which

brings about the result without the intervention of any force starting and working independently from a new source"

—and refused to include therein the following clause requested by defendant:

"and also that the injury to and death of B. F. Oliphant was a result which an ordinary person would anticipate as likely to occur."

Passing on said instruction, this court stated:

"This instruction states a correct principle of law as applicable to the issues and proof thereon in this case, and is so recognized by this court in Lusk v. Pugh, 71 Ok'a. 182, 159 P. 855, 176 P. 80. * * * The definition of 'proximate cause,' as given in this instruction, is recognized as correct in this and many other jurisdictions. The 'foreseen or expected result' clause has been injected in this and other states where the issues and evidence warranted the same. We fail to find any authorities holding that an omission of such clause is prejudicial error under pleadings and evidence similar to the case at bar."

In the case at bar the court further instructed the jury:

"The 'proximate cause of an injury', as that expression is used in these instructions, means the cause which, in the natural and continuous sequence, produces the injury. and without which the result would not have happened."

We see no error in the court failing to include said clause in its instruction.

3. Was it reversible error on the part of the court to fail and refuse to include in its instruction on burden of proof, a clause that plaintiff shall not be entitled to recover on a conjecture, surmise, speculation, or suspicion that decedent's death was due to the alleged negligence of defendant? Defendant requested and was refused the following instruction:

"You are further instructed that before the plaintiff shall be entitled to recover, she must prove by the preponderance of the evidence that her husband's death was caused by the negligence which she charges—not that his death might have been caused thereby. She shall not be entitled to recover if it be merely a matter of conjecture, surmise, speculation, or suspicion, whether her husband's death was or was not due to the alleged negligence of the defendant."

And the court gave no instruction which in any manner informed the jury that plaintiff was not to recover if it was merely a matter of conjecture, surmise, speculation, or suspicion, whether decedent's death was due to the alleged negligence of defendant.

This is assigned as error. This states a correct principle of law, but is applicable only to the introduction of evidence, demurrer to the evidence, motion to direct a verdict, or to set aside a verdict. We know of no authority, and defendant has cited none, holding that the court should so instruct a jury. We think the court did not err in refusing said instruction.

4. Was it reversible error on the part of the court to give the instruction given on assumption of risk and to fail to give a different instruction thereon? The following instruction was given and excepted to:

"You are instructed that the servant only assumes the ordinary risks of his employment and such as are necessarily incident thereto, but he does not assume the risk of a hidden or latent danger which are known to the master and not apparent to the servant, neither does he assume any risk that is brought about by the negligence of the master. Ordinary risks are those of which the servant or employee has notice of, or which are obvious and patent to him.

"You are instructed that if you find from the preponderance of the evidence that the deceased, Oliver Busha, sustained injuries resulting in his death from an explosion of gas given off from the paint being used in painting operations being done in the defendant's 'bus room' and that Oliver Busha, deceased, was instructed by the defendant as to the dangers incident to the painting operations to be carried on in the defendant's 'bus room', and that there was danger of the deceased, Oliver Busha, sustaining injuries in case the said gas were to become ignited, and that with such knowledge and information the deceased, Oliver Busha, plaintiff's husband, entered into the 'bus room', then you are instructed that the plaintiff's deceased husband assumed the risk of his employment and the plaintiff cannot recover in this action.

"On the other hand, you are instructed that if you find from the preponderance of the evidence that Oliver Busha, deceased, had not been instructed by the defendant as to the dangers incident to his employment, and that said dangers were not latent or obvious to the deceased, Oliver Busha, or a man of ordinary prudence and intelligence, and that Oliver Busha, deceased, did not understand and appreciate the dangers incident to said employment in the defendant's 'bus room' wherein he was sent to oversee the said painting operations, then you are instructed that Oliver Busha, deceased, did not assume the dangers incident to his said employment."

While a master is not an insurer against unforeseen and unavoidable accidents, it is the common-law duty of a master to furnish his servant a reasonably safe place to work.

Such duty exists by virtue of the contractual relationship of master and servant. Failure of the master to perform this duty is negligence. By the Constitution of this state the master has the right, in all cases whatsoever, to have his defense of assumption of risk as a question of fact submitted and left to the jury. Such duty and such defense do not conflict or overlap. In each situation, and according to the circumstances, there is a point where such duty ends and such defense begins. This point is a barrier over which neither the duty of the master on one side, nor the assumption of risk by the servant on the other, can pass. It is the duty of the court to properly instruct the jury on the question of assumption of risk covering every phase of the question applicable to the case, so that the jury can accurately determine this point and intelligently pass upon the question. It is not negligence on the part of the master to furnish a place to work where there are dangers connected with the general class of work to be performed, not latent, hidden or obscure, which the master with ordinary care cannot remove; it becomes negligence when the master permits a servant to work in such place who has not assumed the risk of such danger. Except dangers which the exercise of ordinary care wou'd remove, an experienced servant assumes the risk of all dangers that are open and visible, though extraordinary and unusual. A reasonably safe place to work is a comparative term; what may constitute a safe place to work for a servant experienced in the work to be performed may, to a servant without such experience, be fraught with the greatest and gravest of perils, dangers and hazards; the inexperienced servant must be warned and instructed as to such dangers and how to avoid them. What may apparently constitute a safe place for an experienced servant to work may, in fact, be extraordinarily dangerous and hazardous by reason of facts not known, obvious or patent to him, but known to the master or knowledge thereof imputed to the master if the master has created the dangerous situation; the servant must be warned and notified as to such dangers.

The defendant in its brief discusses under its first proposition concerning the alleged conflict between the general verdict and the special findings, many propositions, some of which overlap the other propositions set forth in their brief, one of which was that the deceased was fully informed by the defendant of the danger that might be expected in the "bus room," and consequently it can be seen that this is the identical proposition we are now discussing and which pertains to the notice given to the servant in the case at bar, and which relates directly to the question now under consideration. In support of their discussion, there is cited the case of Fisher v. Prairie, 26 Okla. 337, 109 P. 514, a case wherein there is a lengthy discussion concerning the nature, type, and particular kind of notice and instruction that should be given to an experienced or inexperienced servant, considering his age, intelligence, length of time upon particular job, etc. The case of Fisher v. Prairie, supra, was reversed by this court for the reason that the trial court committed error in giving a faulty instruction on assumption of risk. Inasmuch as this case appears to be a leading case upon this particular question, we wish to clearly distinguish it from the case at bar and call attention to the particular instruction given by the trial court in that case:

"A master who carries on an eminently dangerous undertaking such as the generation and distribution of electricity is bound to know the character and extent of the danger, and to notify the same to the servant specially and unequivocally so as to be clearly understood by him. And you are instructed that unless you believe that the deceased was so instructed as stated above and fully understood same, it will be your duty to find defendant guilty of negligence in this respect."

This court held that this instruction placed too great a duty upon the master, for the reason that it not only required that he give the servant notice and instructions concerning the danger, but went even beyond that, and required the master to so inform the servant that the servant would completely comprehend the danger, or, in other words, the master would have to know definitely of the operation of the servant's mind. It is obvious that this would require of the master a duty which he could not perform and would not know when he had performed same. Therefore, there can be little doubt but that the trial court in the Fisher v. Prairie Case required of the master an unreasonable duty.

The instruction in the case at bar is not at all similar to the instruction given in the Fisher v. Prairie Case.

The real difficulty that we find concerning the trial court's instruction No. 12 is not that it places a greater duty upon the master than could be required, and not that it does not properly instruct the jury con-

cerning the question of assumption of risk, for it satisfies these requirements in the first paragraph thereof, but it goes beyond that, and instructs the jury concerning some particular facts involved in the case.

The question then is, Did the trial court commit error in this instruction by attempting to assist the jury concerning some of the facts which might or might not constitute an assumption of risk?

In the brief of the defendant, it is called to our attention that it has been repeatedly held that a trial court has no authority to instruct a jury that the existence of certain facts does or does not constitute contributory negligence. With that statement we agree, and in this case the trial court did not state what fact or facts would constitute contributory negligence. It is also stated in the defendant's brief that the defenses of assumption of risk and contributory negligence have exactly the same status by our constitutional provision.

Section 6, art. 23, of our Constitution, is as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

The defendant, therefore, states that inasmuch as the trial court has no authority to instruct the jury concerning facts which do or do not constitute contributory negligence, the same rule applies to the defense of assumption of risk. The defendant does not cite or call to our attention any authorities where a trial court has been reversed by reason of pointing out certain facts to the jury in an instruction concerning assumption of risk in addition to the general instruction what does or does not constitute an assumption of risk without reference to the particular facts in a case.

This question was presented to court in the case of Jones v. Oklahoma Planing Mill & Mfg. Co., 47 Okla. 477, 147 P. 999. It is stated by the court as follows:

"It is further urged that, even though it was proper to submit the defenses of assumption of risk and of contributory negligence, the instructions are erroneous as a matter of law, in that they invade the province of the jury, and do not correctly submit these defenses, as required by section 6, art. 23, Const.; And in support of this position it is claimed that the court repeatedly charged the jury that, if they found this fact or that fact to be true, they must find for the defendant. Under the constitutional provision referred to, the defense of contributory negligence or of assumption of risk is in all

cases whatsoever a question of fact, and must at all times be left to the jury. C., R. I. & P. R. Co. v. Duran, supra; Osage Coal & Mining Co. v. Sperra, 42 Okla. 726, 142 P. 1040; St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 P. 1156.

"The criticism leveled at the instructions is that the court charged the jury that, if they found this fact or that fact to be true, they must find for the defendant, but it is not pointed out to the court in the brief of counsel what particular fact or facts were referred to by the court as constituting contributory negligence or of assumption of risk. We have carefully examined the instructions complained of, and are of the opinion that they fairly submit the questions of contributory negligence and assumption of risk, and that, while they may be subject to some criticism, yet, taking the instructions as a whole, there was no prejudicial error committed by the court in the giving of its instructions."

This court had this question presented in the case of Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49, the instruction given by the court in that case being as follows:

"If you believe from the evidence in the case that the plaintiff received the injury complained of while in the employment of the defendant by tramping on a nail protruding through a mudsill, and that the plaintiff knew, or by the exercise of ordinary care would have known, before receiving said injury that said nail was so protruding at a place where it was likely to be tramped on, then the plaintiff assumed the risk of receiving an injury from said nail, and your verdict must be for the defendant, even though you should find that the defendant was negligent in permitting a board with a nail protruding through it to be used as a mudsill."

The court then and there stated concerning this question as follows:

"This goes the limit in defendant's favor, and the defendant could not have asked more on the question of assumption of risk."

In the case of Rock Island Coal Mining Co. v. Allen, 106 Okla. 188, 233 P. 1060, the question is again raised concerning an instruction on assumption of risk, and there again the defendant complains that the instruction is in conflict with the section of our Constitution on this question. The instruction in that case was as follows:

"You are instructed that the deceased, by entering the employment of the defendant and engaging in the work of handling the powder in the jack house which was a dangerous occupation, assumed the ordinary risks and dangers incident thereto, not only

so far as they were known to him, but so far as they could have been known by the use of ordinary care on his part, and if the explosion which resulted in the death of deceased was the result of the ordinary risk and dangers incident to this particular employment the defendant would not be liable unless the defendant was guilty of some negligence which proximately caused said explosion."

The court said:

"We are unable to see where this conflicts with the constitutional provision as to contributory negligence and assumption of risk. The meaning is clear that the jury are instructed that the deceased assumed the risk of the dangers incident to the employment, but did not assume the risk of defendant's negligence. We cannot see how the jury were misled by this instruction to the injury of the defendant. We have examined the entire charge of the court to the jury and we think the court covered all the issues in the case in clear, simple language, such as the jury could easily understand, and same was fair to both sides of the case. We think the judgment of the court should be affirmed."

It is apparent that this question has been before this court, and in cases where the trial court has given an instruction concerning some of the facts of the case, and while these instructions might be subject to criticisms, still, it has been held that unless it can be pointed out where the defendant has been prejudiced thereby, the case will not be reversed.

It should be noted from that part of instruction No. 12 given by the trial court wherein the court refers to certain facts in the case, that they were limited to the question of injuries resulting in death from an explosion of gas given off from the paint, and that this was the only statement of fact that the trial court included in its instruction. The jury found by its special findings that the death was not caused by an explosion of gas given off from the paint, but, to the contrary, was caused by an electric flash or short circuit, and, therefore, it is axiomatic that the part of the instruction complained of was disregarded by the jury and formed no basis for their verdict, and consequently if it can be said that this instruction was error, then it was harmless.

In the case of Shabino v. Dolese Bros. Co., 174 Okla. 69, 49 P. (2d) 686, we find this court analyzing an instruction on contributory negligence, wherein the trial court stated certain facts constituted contributory negligence, and we find that this court considered all of the instructions given by the trial court, and not any particular part of one instruction, and holding that the giving of said instruction on contributory negligence did not constitute an error sufficient to justify a reversal.

Applying the reasoning adopted in Shabino v. Dolese Bros. Co., supra, to the case at bar, we find that the trial court in this case, in instruction No. 22, correctly instructed the jury that they were the exclusive judges of the facts, the weight of the evidence, and the credibility of the witnesses, and in instruction on No. 23, the trial court instructed them that "you were not at liberty to select any one or more of them less than the whole number and disregard the others, but must consider each instruction as a necessary part of the entire charge."

It, therefore, can be said in the case at bar, as well as was stated in the case we have been discussing, that when the instructions in the case at bar are considered as a whole, they constitute a complete rule and guide to the jury and make the jury the exclusive judges of the facts and do not permit them to determine the case on any particular single instruction. We agree with the attorneys for the defendants in this case that the trial court should not set out facts pertaining to the case in an instruction on the assumption of risk, but where the trial court has done so and in the same instruction has properly instructed the jury on the assumption of risk, and then the jury, by its special findings, completely repudiate and do not accept any of the facts set forth in the instruction complained of, we then believe the error, if any, is harmless."

We have carefully read the pleadings and evidence in this case and scrutinized the instructions given by the trial court, and are of this opinion: That this case presents a state of highly controverted facts, and they as such were presented to the jury; that the evidence was fully and ably presented by expert and nonexpert witnesses, technical and otherwise, and, as such, were heard by the jury. The plaintiff pleaded and proved a number of facts, such as an unsafe place to work, improper equipment, improper insulation, improper handling of electricity, etc., any one of which could have constituted negligence and upon same a verdict could have been rendered. To all of these acts of negligence, the defendant ably defended and controverted and as such the jury determined. We think it is a better practice to eliminate from the instructions of assumption of risk any statement concerning the facts in the case, and we do not consider the

instruction of assumption of risk given by the trial court in this case a model instruction or as a guide in stating the law in future cases. However, we cannot believe that the part of the instruction wherein the trial court set out particular facts in this case could or would have changed the results in the trial below for the reasons stated above. When we consider this instruction with all of the instructions in this case, we believe that, in the main, the instructions are more favorable to the defendant than they might have been entitled to under the law of this case.

Where the instructions as a whole fairly cover the legal phases of the case and do not mislead the jury, the same will not be disturbed by this court. Hall & Briscoe v. Strode, 163 Okla. 11, 20 P. (2d) 186; Hall & Briscoe v. Roberts, 163 Okla. 12, 20 P. (2d) 188.

In Hall & Briscoe v. Strode, supra, it is stated:

"This court has ofttimes held that, where the instructions, taken as a whole, fairly and impartially state the issues of said cause, and there is competent evidence supporting plaintiff's cause of action, this court will not reverse the same on appeal. In the case of Bucktrot v. Partridge, 130 Okla. 122, 265 P. 768, this court held: 'Instructions must be considered as a whole and construed together, and, while a single instruction standing alone may be subject to criticism, yet, when the instructions, when taken together in their entirety, fairly submit the issues to the jury, the judgment of the trial court on the verdict of the jury will not be disturbed. It is not necessary that any particular paragraph of the instructions contain all the law of the case; it is sufficient if, when taken together and considered as a whole, they fairly present the law applicable to the issues in the pleadings upon which competent evidence has been introduced.'"

For the reason above stated, and relying upon the above authorities, we hold that the judgment of the district court should be affirmed. And it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Gerald B. Klein, Edgar Lee, and Philip Landa in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. The members of the advisory committee were not in accord in their views and each submitted a proposed opinion. The cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, the views of Mr. Gerald B.

Klein were approved and adopted by the court.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. GIBSON, J., dissents. RILEY and WELCH, JJ., absent.