**McELROY v. FROST.**

No. 35954.

Supreme Court of Oklahoma.

Feb. 2, 1954.

Rehearing Denied March 30, 1954.

274

Draper Grigsby, Grigsby, Foliart & Hunt, J. H. Hewett, Mosteller, Fellers, Andrews & Loving, Oklahoma City, for plaintiff in error.

Elder & Francis, Tulsa, Allen, Crampton, Johnson & Purcell, Wichita Falls, Tex., Cox & Buhrman, Blackwell, for defendant in error.

CORN, Justice.

Plaintiff filed this action September 26, 1951, to recover damages for personal injuries allegedly resulting from defendant's acts of malpractice. The petition alleged plaintiff had received X-ray treatments from defendant for a skin disorder; because of negligent and careless manner in which these treatments were administered plaintiff was burned severely about the groin, scrotum, and genitals, and as a result was rendered impotent and sterile, suffered from radiodermatitis, potential cancer, and constant pain and discomfort; plaintiff would be required to undergo extensive and expensive medical treatment, including castration and skin grafting in an effort to prevent development of cancer. Defendant was charged with negligence in failing to use other accepted methods of treatment, using a defective and outmoded machine; giving treatments that were too long; that rays produced by the machine were too strong and with ordinary care defendant should have known plaintiff would be burned; the machine was placed too close to plaintiff's body and an excessive amount of current was used, and treatments were given at too frequent intervals; defendant would leave room while treatments were being given and depended upon an old alarm clock to warn that treatment period had ended; failing to have the machine calibrated at frequent intervals and failing to use a proper filter on the machine during treatments.

Defendant's answer denied all material allegations of the petition, and affirmatively alleged that he used average care and skill in treating plaintiff. Further, that plaintiff's action was barred by the applicable statute of limitations 12 O.S.1951 § 95(3), since the alleged cause of action accrued more than two years prior to commencement of this action.

The nature of the questions presented on appeal require the following résumé of the evidence. Plaintiff testified that beginning about June, 1947, defendant administered X-ray treatments twice weekly for three or four weeks for a skin irritation in the region of the scrotum, and the condition cleared up. About a year later the condition re-appeared and defendant once again treated plaintiff and brought the condition under control. During treatments defendant used a yardstick to measure distance of the machine from plaintiff's body, and an alarm clock for a timing device, and several times during the course of the treatments would absent himself from the treatment room. At the conclusion of these treatments plaintiff's condition again improved, but in 1949 the condition once again appeared.

Plaintiff returned to defendant for further attention, and according to his testimony, during November, 1949, underwent a three weeks course of X-ray treatments, administered daily except Saturday and Sunday. During this series of treatments defendant was out of the X-ray room upon at least three different occasions and during this series the defendant made the time of the treatment periods slightly greater than before. Following the end of this period the skin in the affected areas became red and leathery, was subject to swelling and had a burning sensation. Upon this condition being called to his attention defendant declined to use X-ray further and prescribed an ointment to be applied locally.

Between January and March, 1950, plaintiff was treated by another doctor (Yeary). He also received X-ray treatments for an irritation on other parts of his body but not the area involved herein, from a specialist (Dr. Chont) in Winfield, Kansas. Later in the year a skin specialist in Fort Worth, Texas, prescribed an ointment for plaintiff's condition, plaintiff having moved to the state of Texas. He was also treated by a skin specialist (Dr. Maner) in Wichita Falls, Texas, and at that time another specialist (Dr. Allen) in radiology was called in to examine plaintiff and to make certain pictures, introduced in evidence at the trial, graphically depicting plaintiff's condition. Plaintiff was under Dr. Allen's care at the time of this trial.

Parts of defendant's deposition were admitted in evidence as admissions against interest. Defendant's office records showed each treatment administered was with a machine setting of 80 kilovolts, 5 milles, 15 inch distance, two minutes time. Defendant admitted that he might have left the treatment room at times.

A doctor (Barry) qualified as an expert in treatment of cancer testified for plaintiff. His examination of plaintiff's condition revealed a marked inflammation of the skin, atrophy of the testicles and extensive radiodermatitis, an inflammation of the skin resulting from use of X-ray or radium; the effect of the treatment on plaintiff would be to render him sterile, and his condition ultimately would develop in cancer of a fatal type. The witness testified X-ray treatment was too dangerous for a general practitioner, and was not justified as the first form of treatment for skin disorder; it was especially dangerous in the bodily area defendant treated because of danger of sterility; use of a yardstick for measuring distance from the machine was too inaccurate, and a proper type machine would have a built in timer for cutting off the machine, rather than to rely upon an alarm clock. Proper treatment of plaintiff's condition would require castration and extensive skin grafting. A proper course of treatment for plaintiff's skin condition would have been no more than 75 roentgen units per week; if plaintiff received the number of treatments testified to this was sufficient to produce the condition which plaintiff was in.

Another witness (Dr. Allen) qualified as an expert in the field of radiology. He had examined plaintiff about a year and a half prior to the trial, and had been given a history of plaintiff's having received a daily series of X-ray treatments extending over a three weeks period, except Saturday and Sunday. Examination revealed plaintiff to be suffering from a pre-cancerous condition of the skin, raised areas of hyperkeratosis, bleeding from the scrotum and atrophy of the testicles. In his opinion such condition resulted from X-ray exposure, and he corroborated the other witnesses' testimony as to obvious irregularities in defendant's mode of treatment of plaintiff. He further testified defendant was negligent in giving more than 100 roentgen units per day, and that no skin disease justified such daily doses. And, his testimony also pointed out three different phases in defendant's course of treatment which in his opinion were wrong, as well as pointing out several particulars wherein defendant displayed lack of knowledge of correct X-ray technique and treatment; indicating defendant did not meet the standards of a doctor of medicine.

Another doctor (Rossito) qualified as an expert in the field of radiology. This witness had examined plaintiff just before called upon to testify, and his diagnosis of

plaintiff's condition was in agreement with that of the other expert witnesses. Any examination of plaintiff would reveal his condition resulted from over-exposure to X-ray, which should not be given daily, and it was not the practice to give daily X-ray treatment for minor skin conditions such as plaintiff had; the dosage (80 kilovolts, 5 milles, 15 inches, 2 minutes) defendant claimed to have given meant nothing, and was not a proper expression of dosage in the absence of other factors. The witness likewise corroborated the other medical testimony that defendant was guilty of poor practice in timing X-ray treatments by an alarm clock and in leaving a patient alone while exposed to X-ray. Further, the only means to be used in attempting to remedy plaintiff's condition would be by extensive plastic surgery, and he definitely was suffering from pre-cancerous lesions.

Defendant testified in his own behalf that he last treated plaintiff with X-ray in April, 1949, and his skin was not in the severe condition described by plaintiff. He testified positively that he had not treated plaintiff during November, 1949, because he was in another state from November 9 to the 24th. He was corroborated in this by several other witnesses. Further, in February, 1949, the settings "80 kilovolts, 5 milles, 15 inch distance, 2 minutes time" were on his machine when he treated plaintiff; on each treatment the patient received 100 roentgen units.

There was testimony by a doctor (Yeary) that he had treated plaintiff for ringworm between January and June, 1950, and that plaintiff showed no symptoms of X-ray burns during that time.

Another witness for defendant was a doctor (Chont) who qualified as an expert in radiology. The witness had treated plaintiff in May and June of 1950, and had given plaintiff X-ray on his hands and upper groin, but had shielded other parts of the body, and he did not recall having advised plaintiff there had been any X-ray damage to the affected areas. The witness examined plaintiff and testified that there was revealed evidence of X-ray damage. He further testified a course of treatments such as plaintiff testified to having received would have been an excessive dose.

The plaintiff recalled Dr. Rossito for rebuttal testimony, and he testified if plaintiff received the treatments as testified to and at the machine settings claimed by defendant, and with the calibration claimed, plaintiff would have received 2460 roentgen units during the course thereof and this would have been sufficient to produce the condition which examination revealed plaintiff had.

By way of further rebuttal plaintiff was recalled and testified, over defendant's objection and motion for continuance, that he began taking treatments from defendant in October and finished in November.

At the close of the evidence the case was submitted to the jury under appropriate instructions and the jury returned a verdict in plaintiff's favor ($29,125) upon which the judgment now appealed from was rendered.

The defendant's claim for reversal of the judgment is based upon the single proposition that the trial court erred in overruling the motion for new trial. The argument in support of this contention is presented under 5 separate subdivisions.

It is contended first that where the trial court does not concur in the verdict and believes the jury should have found for the losing party, it is the duty of the trial court to grant the motion for new trial. The basis for such contention is to be found in the remarks of the trial court from the bench upon the hearing of the motion for new trial.

Upon presentation of the motion the trial court saw fit to make rather extended observations concerning matters which arose in the trial of the case. In so doing the court stated that, had he been sitting as the trier of the facts, he would not have resolved the questions as the jury did, and indicated that plaintiff would not have received a verdict at his hands. However, the court went ahead to point out that, in his judgment, there was sufficient evidence upon certain points to require submission thereof to the jury, that the question of

actionable negligence was for the jury, and that in his opinion the defendant had received fair trial. And, although recognizing the doctrine of a trial court sitting as a thirteenth juror, he pointed out that this did not extend to substituting his judgment for that of the jury. The court then overruled the motion for new trial.

Defendant urges that since the motion for new trial presented the question that the verdict was not supported by the evidence, and because the trial court did not concur in the verdict, it was his duty to sustain the motion for new trial. An extended argument is presented, based upon prior holdings of this court in such cases as Yarnell v. Kilgore, 15 Okl. 591, 82 P. 990; Hogan v. Bailey, 27 Okl. 15, 110 P. 890; Rison v. Harris, 50 Okl. 764, 151 P. 584, and White v. Dougal, 60 Okl. 200, 159 P. 907. The rule relied upon is stated in the syllabus of Yarnell v. Kilgore, supra, as follows:

> "It is the duty of a trial court, where a motion for a new trial contains as one of the grounds therefor that the verdict is not supported by the evidence, to weigh the evidence and to either approve or disapprove the verdict, using its own reason and judgment in determining such matter; and if the verdict is such that its own mind refuses to concur in it after due consideration, and the court honestly believes that the verdict should have been for the adverse party, it should grant a new trial."

Review of the numerous cases cited discloses such holdings to be based upon the reasoning that, while the jury is the trier of facts, when a judgment is rendered and the sufficiency of the evidence to support same is challenged, the trial court must weigh the evidence and unless he is satisfied therewith to the extent of approving the verdict a new trial should be granted.

In this case consideration of the court's remarks indicates that, while he may have been left with some question in his mind as to the sufficiency of the evidence in some respects, nevertheless he positively recognized the existence of sufficient evidence upon certain salient issues to require submission thereof to the jury. And, moreover, it should be noted that the court likewise felt that the defendant had received a fair trial and in such an instance no grounds existed for substituting his own judgment for that of the jury. Despite the trial court's contradictory remarks concerning his own impressions in the matter, which assuredly indicated his consideration and weighing of the evidence, he thereafter approved the verdict rendered by overruling defendant's motion for new trial.

In National Tank Co. v. Scott, 191 Okl. 613, 130 P.2d 316, there is revealed an analogous situation. Therein this court, after quoting the rule laid down in Shabino v. Dolese Bros. Co., 174 Okl. 69, 49 P.2d 686, said in 191 Okl. at pages 616–617, 130 P.2d at page 320:

> "* * * But, in the absence of a showing to the contrary, we must assume that the trial court was well aware of the duties and powers placed on it by law. * * * There was no indication on the judge's part that the trial court was without power to interfere with the verdict. We must presume that he well understood the court's powers and duties in the matter, and, instead of setting aside the verdict as not being agreeable with his own conscience, he accepted the same as a just conclusion, yielded his own opinion, and accepted that of the jury. We find no error or abuse of discretion in the matter."

We observe no abuse of discretion in the trial court's action herein. The argument that the trial court committed reversible error in refusing to grant a new trial because of his failure to conscientiously concur with the verdict is without force, in the face of the trial judge's consideration of the entire matter and obvious conclusion to yield his opinion to that of the jury. We believe the controlling rule is stated in syllabus 2 of National Tank Co. v. Scott, supra;

"While it is the duty of the trial court, in the exercise of sound discretion, to grant a new trial if, in its judgment, the verdict is not supported by competent testimony, or if, upon the whole record, it is convinced that justice has not been done, yet this does not prevent the trial judge from yielding his impression or opinion upon the testimony and adopting that of the jury if, upon consideration of the whole record, he is convinced that no prejudicial error has been committed by the court and that the verdict is sustained by sufficient competent proof which the jury has accepted and believed."

Defendant next argues the evidence failed to established defendant's failure to exercise ordinary care and skill in his treatment of plaintiff, and that the trial court failed to instruct the jury properly on these points. It is argued that the applicable rule in this jurisdiction is expressed in Cooper v. McMurry, 194 Okl. 241, 149 P.2d 330, 332, which opinion quotes from Hembree v. Von Keller, 189 Okl. 439, 119 P.2d 74 (syll. 1) as follows:

"A physician is not responsible for damages for want of success, unless it is shown to be the result of want of ordinary skill and learning, such as ordinarily possessed by others of his profession practicing in the general community, or for want of ordinary care and attention. He is not presumed to engage for extraordinary skill or for extraordinary diligence or care, nor can he be made responsible in damages for errors in judgment; or mere mistakes in matters of reasonable doubt or uncertainty."

█ As respects the argument that there was no evidence tending to establish defendant's failure to use ordinary care and skill in his treatment of the plaintiff, it is necessary only to observe that this record discloses testimony by three expert witnesses to the effect that the treatment given by defendant was not justified as a first treatment for a skin disease such as plaintiff suffered from; that defendant's technique and procedure for treatment were improper, and the giving of daily treatment was not proper practice, and amounted to over-exposure. The argument that there was no evidence tending to establish lack of care on defendant's part is without merit.

█ Further complaint is made that the trial court failed to instruct the jury that defendant was not to be considered an insurer, that there was a presumption of due care in defendant's favor, and that plaintiff's injury might have resulted from plaintiff's unusual susceptibility to X-ray. Reading of the instructions given discloses the trial court fully informed the jury that the burden of proof was upon plaintiff to make out a case of negligence, and to establish by a preponderance of evidence his injury resulted from defendant's failure to exercise ordinary and reasonable care and diligence. Although the wording "not an insurer" was not contained in the given instructions, it was adequately brought home to the jury that defendant was not required to possess the highest degree of skill, but that if they found defendant used ordinary skill and knowledge in treating plaintiff then they should find for defendant. Without extended discussion of the instructions given, it is sufficient to note that consideration of the trial court's instructions reflects that they fairly and adequately apprised the jury of the law to be applied to the evidence, and no reversible error appears therein.

Defendant also argues that the fact certain doctors testified they would not have treated plaintiff in the same manner defendant did is not evidence of lack of due care. And, the testimony was elicited from doctors who were from other states, and not doctors practicing in the same community with defendant.

██ The medical testimony relative to the nature, extent and cause of plaintiff's injuries has been set out above. It is true the witnesses were not from the same community but, with one exception, the medical evidence in plaintiff's behalf came from specialists in their particular field. It is a matter of common understanding that a proper method of treating human ailments

by X-ray would not vary from place to place or state to state. What is the best practice in one place likewise would be the best in another. This reasoning is the basis of the decision in Giles v. Tyson, Tex.Civ. App., 13 S.W.2d 452, cited by defendant, wherein it is expressly held that an expert in the use of X-ray can testify to what is proper use thereof, since such proper use would be the same whether in New York or Texas. Such reasoning provides a complete answer to the argument advanced in this respect.

■■■■ The defendant also urges error in the trial court's refusal to grant a continuance at the time plaintiff was recalled to the witness stand, at the close of defendant's case, and then testified over defendant's objection that he received treatments from defendant in October, 1949, rather than in November. It is defendant's claim that their defense was predicated upon the showing that defendant was out of the state during the period of the alleged treatment. Thus defendant asserts that permitting plaintiff to take the stand and change his testimony amounted to such surprise as to greatly prejudice defendant.

The petition set forth that plaintiff went to defendant for treatment in October, 1949, and that treatments were concluded in November, and plaintiff's evidence was directed toward establishing that he was treated in November. The record shows several instances where it was mentioned during course of the trial that plaintiff claimed to have been treated in October, 1949, and this matter was recognized by defendant's counsel in his opening statement. Under such circumstances it is difficult to understand in what manner defendant was surprised by plaintiff's rebuttal testimony. We fail to see in what manner prejudice could have resulted to defendant, since at most the questioned testimony could only have affected plaintiff's credibility. The granting or refusal of a motion for continuance is within the trial court's discretion. No abuse of discretion is apparent in the trial court's overruling of defendant's motion.

■■■■ Two other matters are argued in defendant's brief. One of these is the claim that the trial court erred in failing to instruct the jury on the question of the Statute of Limitations. Defendant requested an instruction that any damage plaintiff suffered in the years 1947–48 from X-ray treatments would be barred by statute. The court explicitly told the jury that any treatment administered by defendant over two years prior to the date the action was filed would be barred and they should find for defendant. The argument that the instructions given were insufficient and the jury was confused by the instructions given, as well as by the refusal to give defendant's requested instructions, is without substantial merit. The court's instructions adequately presented the issue of the statute of limitations for the jury to consider. In such an instance requested instructions are properly refused. Atchison T. & S. F. R. Co. v. Raleigh, Adm'r, 194 Okl. 589, 154 P.2d 62.

■■■■ It is further contended the trial court erred in failing to exclude improper, hypothetical questions; or that if such questions were proper they were insufficient without corroborative evidence to show negligence. The argument is that certain hypothetical questions asked plaintiff's expert witnesses made no mention of the calibration of defendant's X-ray machine. Thus, since calibration of such a machine is a vital factor in determining the machine's output, defendant argues that the questions were improper because the expert's testimony failed to take this factor into account, and thus were based upon false assumptions. The defendant introduced in evidence an exhibit establishing the calibration of defendant's machine. Subsequently plaintiff's expert witness, as well as defendant's own expert, made use of this exhibit in making calculations as to the total roentgen units plaintiff received during the treatments given by defendant. Although true that certain answers elicited by hypothetical questions were given without this factor being established, the record discloses sufficient evidence upon this phase of the matter, coupled with other record evidence, to destroy the force of this argument.

Although plaintiff's expert witnesses were unable to testify specifically that plaintiff's injury resulted from over-exposure to X-ray during defendant's treatments, there was ample evidence from which the jury could find that the course of treatment plaintiff received was improper, and that plaintiff's injuries resulted solely from over-exposure as claimed.

Judgment affirmed.