**SHREVE et al. v. CORNELL et al.**

No. 27382. March 1, 1938.

194

Clayton B. Pierce, Truman B. Rucker, and Harold Sullivan, for plaintiffs in error.

Maurice M. Thomas, for defendant in error Grace Cornell.

GIBSON, J. Grace Cornell sued Shreve, Huff, and McKay in the district court of Oklahoma county for personal injuries resulting from the alleged negligence of the defendants. Verdict was for Cornell and against McKay. Shreve and Huff were exonerated. Both Cornell and McKay filed motions for new trial, which were sustained. Shreve and Huff appeal.

The trial court, upon timely request, assigned as its reasons for sustaining the aforesaid motions that the verdict was not sustained by the evidence, and that there was a mistake in the instructions as given by the court.

It is the duty of the trial court upon request of a litigant to state its reasons for sustaining motion for new trial, and on appeal from an order granting a new trial this court will confine its review to the reasons so assigned by the court. Alexander v. Alexander, 179 Okla. 614, 67 P.2d 33, 36-37.

In reviewing such orders this court is governed primarily by the rule many times announced by its decisions, and which may be found specifically stated in Spruce v. C., R. I. & P. Ry. Co., 139 Okla. 123, 281 P. 586, as follows:

"Greater latitude is given the trial courts in sustaining motions for new trial than in overruling such motions. The general rule is that the action of a trial court in sustaining a motion for new trial will not be disturbed by the appellate court unless the trial court has acted arbitrarily or has clearly abused its discretion, or has manifestly erred in some pure, simple, and unmixed question of law."

The trial court in assigning its reasons for granting a new trial has failed to point out the alleged mistake in the instructions. We find, after an examination thereof, that said instructions fairly state the law applicable to the issues. In sustaining the motion on that ground the court committed an error of law which, in the absence of other reasons, would ordinarily require a reversal of the judgment.

In addition to the above ground, however, the court said: "I can't agree with the jury about its findings. * * * I think the verdict of the jury was entirely contrary to the facts and the evidence and I can't consistently O. K. the verdict. * * * I felt like it was my duty while the jury was here to grant a new trial in their presence. I know it is proper to do it. It was so contrary to the testimony I would be ashamed to let the verdict stand." The court has in effect said that the verdict did not meet with its responsive and affirmative approval and conscience. If the verdict fails in this respect it is the duty of the trial court to set it aside and grant a new trial. Rawleigh Co. v. Cate, 170 Okla. 38, 38 P.2d 940. There we announced the doctrine as follows:

"It must not be forgotten that it is an unyielding and obligatory duty of the trial court to carefully weigh the entire judicial proceedings, which have occurred throughout the trial, and, unless the verdict of the jury meets the responsive and affirmative approval and conscience of the court, it should not stand, and the same should be set aside, and a new trial granted."

In speaking of the duty of the trial court when confronted with such circumstances, and our duty with relation thereto on appeal, we said on rehearing in Alexander v. Alexander, supra, that "whether the proceedings and the result thereof meet the 'responsive and affirmative approval and conscience of the court,' as stated in the A. & A. Taxicab Company Case, 179 Okla. 492, 66 P.2d 17, 'is a matter wholly within the knowledge and discretion of the trial court'

and it is not within the province of the Supreme Court to say that such verdict did not satisfy the conscience of that court."

Where the verdict with relation to conflicting evidence on a material issue fails to satisfy the conscience of the trial court, we are not inclined, on appeal, to dispute its conclusion and attempt to say, in the absence of a clear showing to the contrary, that the court has acted arbitrarily or abused its discretion. In this we are clearly supported by many of our former decisions. The Territorial Supreme Court, in Linderman v. Nolan, 16 Okla. 352, 83 P. 796, held:

"It is the duty of a trial judge to set aside the verdict of a jury unless he is satisfied that substantial justice has been done. An appellate court should not set aside a verdict unless it is manifest that injustice has been done."

In arriving at that conclusion the court said, among other things, that "where the evidence is conflicting on a material question, and the trial court sets aside the verdict of the jury, this court will not interfere." The above rule now obtains in this state without material alteration.

In setting aside the verdict for insufficiency of the evidence the trial court does not commit an error of law unless there is a total failure of evidence to support the cause or defense of the party in whose favor the new trial is granted. A. & A. Taxicab Co. v. McCain, supra. Here the evidence was conflicting. Therefore the court's ruling thereon, that the same was insufficient, involved no question of law.

Although the trial court erred as a matter of law in granting a new trial on the ground of incorrect instructions, the error is rendered harmless in the face of the additional reason that the verdict by reason of the insufficiency of the evidence did not meet with the conscientious approval of the court. In the instant case the trial court on timely request has properly assigned its reasons for granting a new trial. There were two such reasons given. One was erroneous as a matter of law; the other lay within the court's sound judicial discretion, and is one we may not question in the absence of a manifest abuse of such discretion or a clear showing of arbitrary action.

The judgment of the trial court granting a new trial is therefore affirmed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, HURST, and DAVISON, JJ., concur. PHELPS and CORN, JJ., dissent.

CORN, J. (dissenting). I am unable to concur in the majority opinion for the reason that in my judgment the record affirmatively shows that the trial court acted arbitrarily and abused its discretion in setting aside the verdict and granting motion for new trial, and that it contains errors in the application of certain rules of law, which are destructive of the right of trial by jury and of the right of appeal. These rights are defeated by rendering futile the legal processes provided by the Constitution and laws of the state to preserve and enforce them by the substitution of the judge for the jury and then by holding that his arbitrary and capricious acts and judgments are not subject to review by this court regardless of the record. That is what the majority opinion, under the facts in this case, amounts to, and such glaring and flagrant error should not be ingrafted into the body of the law of this state.

The rule expressed in the majority opinion that such verdict should meet the responsive and affirmative approval of the trial court is a good rule of law, but it is necessarily founded upon the assumption that the trial court possessed an unbiased and unprejudiced mind. If it is not within the province of this court to question the discretion of the trial court in striking down the verdict of a jury and granting a new trial of the cause, then we must hold that the trial court is infallible, that the judgment of the trial court is final and that the unfortunate litigants must repeatedly try their cause in such court until the jury finally brings in a verdict in accordance with the views and wishes of the trial judge, or else waive trial by jury in order to avail themselves of the right of appeal.

The remarks of the court clearly show a disposition on his part to substitute his opinion for that of the jury, and also show bias and prejudice. The court said:

"I am not blaming them (the girls) for getting in. The only man that hadn't had a drink and perfectly sober was driving the car and they relied on him to operate the car, but he didn't operate it.

"Now, I am going to tell you how I think this accident happened. My judgment is that the car the girls were in was going much faster than the ambulance. The ambulance came up and was coming from the right and under the rules of the road had the right if it got there about the same time, there is some proof one was there first and some proof the other—the Dodge car was

going faster than the other car. They didn't observe the ambulance until they got nearly to it. They made a swerve to the left and the ambulance a swerve to the right and the proof shows that the ambulance is heavy, and when he swerved that heavy top it had a tendency to throw it back to the left and just at that time the automobile hit the corner of that car and that is what threw the ambulance over to the south and nothing else could have done it except a hard jolt. You couldn't have thrown the ambulance any other way in the world. **I can't agree with the jury about its findings.** I think the defendant Shreve was absolutely negligent and a new trial will be granted. Mr. Rucker: May I be heard? The Court: Yes, I am going to grant it. I come near doing it before the jury. Mr. Rucker: I can't help but agree with Mr. Thomas that the instructions were eminently fair. The Court: I can agree they were not eminently fair; they are my own and I am dissatisfied with them. Mr. Rucker: Were eminently fair for this reason, there were no exceptions ——. The Court: (interrupting) The court has got a right to take his own exception. Mr. Thomas: We have got our right to except. Mr. Rucker: And there was no requested instructions filed that I know of, and if Mr. Hirsh's statement is to be taken as true, then he is entitled to a new trial. I am not here to resist any motion for new trial between the plaintiff and the defendant Hirsh (McKay), but I am here to point out to your Honor in a companion case tried in this county, an identical verdict was rendered on practically the identical testimony and identical issues. That was sustained. I am not here to say that the court is bound by the holding of any other judge, but where we have two juries in two identical cases rendering identical verdicts, it doesn't seem to me that the plaintiff is entitled to a new trial against us. You draw your deductions and Mr. Thomas and Mr. Hirsh and myself all drew our deductions from the physical facts. I say the physical facts speak eloquently, like Mr. Thomas, and I differed from him and the jury saw fit to follow my deductions. The physical facts speak for themselves, the best witness for the defendants. We have not only Shreve and Huff, but one entirely disinterested witness, probably in a better position to see, and he backs up their story to 100 per cent. There is no question but that the Dodge car, the car of my client, was knocked further to the west than it went after the accident. The Court: It knocked itself there, it was going so fast. Mr. Rucker: When an ambulance traveling at a high rate of speed —— The Court: (interrupting). The ambulance was not going half as fast as the Dodge, that is my judgment about it. I think the physical facts prove it. I think the verdict of the jury was entirely contrary to the facts and the evidence and I can't consistently O. K. the verdict. A new trial is granted. Mr. Rucker: May I ask this —— The Court: (interrupting) No, there is no answer. Mr. Rucker: May I ask you to state your reason for giving a new trial. You can't sustain the verdict —— The Court: I can't sustain the verdict and I can do it on the ground of erroneous instructions. Mr. Rucker: Which one? The Court: Two, three or four of them and two or three requested ones which I didn't give. Mr. Rucker: To be frank with you, it is my intention probably to appeal to the Supreme Court and I would like for you, if you will please, to do so, to assign your reasons. Mr. Thomas: Your Honor stated I could save my exceptions and there are some I want to except to. The Court: Mr. Hirsh submitted me that paper and asked me for instructions and I gave one and meant to give another I ought to have given and overlooked. Mr. Rucker: May I be allowed this right before you finally rule on the matter? I have read to you and I am offering in evidence at this time the record in the case of Jessie Mae Francs v. The McKay Funeral Home and H. R. Huff and Warren Shreve. The Court: There will be no evidence offered at this time; the same is denied. Mr. Rucker: The same being No. 86774, in the district court. At this time I would like to make the offer of proof of that record. The Court: The offer will be denied."

Counsel for these defendants showed the court that the two other young ladies injured in the same collision brought separate suits against the same defendants and in both of those cases the jury returned a verdict against McKay and exonerated Shreve and Huff, as in the case at bar, and suggested to the court that where three juries and two district judges had come to the same conclusion upon the same state of facts, it did not seem fair nor proper to grant the new trial and force them to trial again, but in the face of these facts the verdict was set aside and new trial granted.

This court has properly held that new trials ought to be granted whenever, in the opinion of the trial court, the moving party has not had a reasonably fair trial. In Wilson v. Central State Bank of Muskogee, 92 Okla. 234, 218 P. 1061, in substance this court stated that a new trial should be granted whenever the trial court believed and is convinced that the moving party did not have a fair trial and had not obtained substantial justice, although it might be difficult to state the grounds upon paper so plainly that the Supreme Court could understand them as well as the trial court and the parties.

In the Alexander Case, cited and relied

on in the majority opinion, on three different occasions the trial court stated that in his opinion the plaintiff did not have a fair trial. But a careful search of the record of the case at bar reveals that at no time did the trial court state that in his opinion the plaintiff did not have a fair trial.

The trial court in the case at bar stated that he made a mistake on the instructions, yet, when requested by counsel, he refused to state to which instruction he was referring. Then the trial court stated that it was some requested instruction. The record conclusively shows there were no requested instructions filed, and the majority opinion correctly holds the instructions given were sufficient.

The trial court then stated that he just did not agree with the verdict of the jury. The reason for granting a new trial is clearly expressed when the court said: "Now, I am going to tell you how I think this accident happened." In line with that statement the court stated that in his opinion the Dodge car struck the ambulance and the Dodge car was going faster than the ambulance.

Let us test these two reasons by the record. Page 247 of the case-made is a true and correct picture of the condition of the Dodge car immediately after the accident. An examination of this picture shows conclusively that this car did not run into the ambulance, but, to the contrary, the ambulance ran into the side of this car. It is quite clear that the front of the car was not damaged at all and the damage done to the right side of the car clearly indicates that it received a severe blow at that point.

The trial judge stated that in his opinion he thought the Dodge was going faster than the ambulance. There were only six witnesses who estimated the speed of these two cars. Two of them stated the Dodge was going faster than the ambulance. Four of them stated that the ambulance was going much faster than the Dodge, and two of these four witnesses were disinterested and in a position to see the entire accident.

Bob Pamplin, a disinterested witness, testified as follows:

"Q. And according to your estimate of speed, the ambulance was traveling about twice as fast as the Dodge? A. Yes, that would be my best judgment. Q. Without a doubt, the Dodge was into the intersection first, was it not? A. Yes, I believe it was. * * * Q. Then from the point of impact, the Dodge car had traveled much farther west than north? A. Yes. Q. In other words—that's clear—you say the Dodge was struck almost square in the middle? A. That's my best judgment. It was struck almost in the middle."

Thereafter, Mr. Huff, Mr. McDonald, a disinterested witness, and Mr. Shreve testified; their testimony was introduced to the effect to show that Broadway was nearly 80 feet wide, that Tenth street is about 40 feet wide, and that the Dodge was over half way across Tenth street and on the east side of Broadway when the accident occurred, that it ended up just a few feet north of the sidewalk on the north side of Tenth street, and partially on the sidewalk on the west side of Broadway. Therefore, the Dodge, under the testimony of all the witnesses, traveled much farther to the west, or sideways, in fact nearly 60 or 70 feet west from the point of contact, than it traveled north following the accident. Each of these witnesses stated the ambulance was traveling much faster than the Dodge.

The evidence offered by the defendants, the testimony of the disinterested witnesses that were called to the stand, and the testimony of practically all the witnesses, is entirely borne out by every physical fact in this case. In addition, it is borne out by logic and reasoning. It was convincing to the extent that three separate and individual juries believed it was correct and arrived at an identical conclusion. And when three juries arrive at the identical conclusion, and two judges approve such a verdict, then it does seem strange that one trial judge, because he "thinks" the accident occurred some way other than it actually did occur, should be able to override the verdict of the jury.

If there had been any question as to whether or not the plaintiff had received a fair trial, then the Alexander Case could be applicable.

It therefore appears to me that the trial court was not satisfied with the verdict either because a judgment was not rendered against Shreve or the amount of the judgment was too small. The evidence as to whether Shreve was negligent was conflicting, therefore solely a question to be determined by the jury, and its verdict will not be set aside on motion for a new trial or by this court if there is any evidence reasonably tending to support it.

Section 399, O. S. 1931, provides that a new trial shall not be granted on account of the smallness of the damages, in an action for an injury to the person, and this court has repeatedly held that said section is an absolute limitation upon the power of

198

the trial court to grant a new trial on the ground of the smallness of the verdict. Murray v. Decker, 132 Okla. 188, 270 P. 38; K. C., M. & O. Ry. Co. v. Allums, 133 Okla. 181, 271 P. 949; Woodard v. Sanderson, 83 Okla. 173, 201 P. 361; and M., K. & T. Ry. Co. v. Lindsey, 82 Okla. 165, 198 P. 1000.

It is evident from the record that the foremost reason in the mind of the trial court was to obtain a larger verdict for the plaintiff, or a judgment against the defendants Shreve and Huff. Of course, he did not state that as a reason, but if the review by this court is confined to the reasons assigned by the trial court, then it would be impossible to get at the real issues involved, and so, regardless of the specifications of error urged by the parties to the appeal.

It is my conviction the record in this case discloses that in granting the motion for a new trial, the trial court acted arbitrarily and clearly abused its discretion, and that its judgment should be reversed.

PHELPS, J. (dissenting). I concur in much that is said in Mr. Justice Corn's dissenting opinion and in addition thereto call attention to the fact that we are not here considering the undoubted right of the trial judge to grant new trials in those cases wherein a miscarriage of justice has probably resulted from one of the many things which may happen in the trial of a case, the prejudicial effect of which is peculiarly within the knowledge of the trial judge alone. The question here under consideration is the right of the trial judge to grant a new trial, where the evidence would have supported a verdict either way, **for the sole and only reason that he does not agree with the verdict.**

The majority opinion is consistent with certain former decisions of this court. The error lies, not in the majority opinion, but in an erroneous rule which it follows instead of overruling. However, the instant case is an ideal illustration of the evil resulting from such a rule.

The amazing result of the rule, as applied to the instant case, is that even though the evidence is overwhelmingly in favor of the verdict, and even though the record itself reveals that truth, and even though the jury and two other juries and two other trial judges in companion cases on the same evidence, making in all three juries and two district judges, have all agreed that the verdict bespeaks the truth, still, if there is a scintilla of evidence to the contrary, the trial judge may, merely because of his "con-

science," set said verdict aside at his will. What, then, is the presumption as to the quality of conscience possessed by the other two district judges?

It is admitted by the opinion that whether the verdict receives the approval of the judge's "conscience" is a matter wholly within the knowledge of the judge himself, and that therefore we are not in a position to pass on that question, hence the judgment is affirmed for that reason. Off, then, into that inaccessible realm known as the judge's "conscience" has gone the litigant's valuable right of review. Into that nebulous sphere no mere rule of law, not even the Constitution, may penetrate. It is a high and impregnable wall, entirely surrounding a lone single germ known as the scintilla. Against it may be pitted the combined and cumulative forces of virtually all the evidence, and the rational inferences to be drawn therefrom as known to ordinary men, —all to no avail. The "conscience" of the judge, into which we may not inquire, and which we are forbidden to measure by the more practical rules of law, has for some unknown reason failed to agree with twelve of his fellow men on a question, not of law, but of fact.

The "conscience rule," if it must replace the jury system without a constitutional amendment to that effect, must be expected to produce some peculiar results from the standpoint of uniformity. There are 43 district judges, 77 county judges, and a lesser number of superior and common pleas court judges in this state, each possessing that thing which we call his conscience. While these judges are familiar with the principles of law, which are the same in one part of the state as the other and which remain the same regardless of the identity, temperament, and previous experience of the judges, there is no assurance whatever that the conscience of one judge will not materially differ from that of another. In fact, there is no assurance that the conscience of any one judge will remain the same. It may vary, for instance, with his physical condition. At another time or place, or under other circumstances, it may be that the conscience of the trial judge in the instant case would have been perfectly attuned to that of the other two district judges who heard the companion cases on exactly the same evidence, and whose conscience did not prevent them from entering judgment on the verdicts identical with this one, in conformity to the great weight of the evidence.

As I see it, under the "conscience rule,"

there is no effective right of review. The admission in the majority opinion, quoting from a former decision to the effect that we are not in position to determine whether the verdict received the approval of the judge's conscience, is the very thing that undoes the rule announced. The law has no control over such a thing, the litigant has no control over it, the judge himself often must lose control of it. We do have control and have been getting along pretty well for a number of years with the jury system, cumbersome and subject to criticism as it may be. I deplore the fact that we have now come to the place where we accord the uncertain conscience of the judge superiority over the unanimous verdict of twelve good men, supported abundantly by cold facts in the record, which we may look at, see and understand; and after which the unsuccessful party may leave the court and go about his business, not pleased, but at least assured that his claims have been denied in a regular manner by a jury of his peers, free from any sense of arbitrary injustice imposed by the hand of any one man.

The whole reason for placing the provision in our Constitution making inviolate the right of trial by jury is that the experience of centuries has taught that in the large run of cases over an extended period of time the rights of litigants on disputed questions of fact are better and less corruptly adjusted by juries composed of laymen. But, it is argued, under the rule followed in the majority opinion the litigant does get a trial by jury, in that the only effect of the order is to grant another jury trial. But the point is that there has **already** been a fair jury trial, —one that is legally satisfactory in every respect, and in which the verdict is overwhelmingly supported by the evidence; except, that for some unknown and uninquirable reason the judge's "conscience" has not been pleased. But, aside from that, let us assume that the case is tried in some district where there is but one judge, who professes, of course, to be fair. (It is well to remember that our judicial structure is fashioned in such manner that not only is the judge presumed to be fair but, under the process of appeal, he **must** be fair.) On account of some whim connected with his "conscience," possibly caused subconsciously by previous experience, let us say he grants the new trial although the evidence abundantly supports the verdict. Is there any assurance that he will not do the same thing the second time, or the third time, when the case is repeatedly called for trial? I suppose the answer to

this is that some day a jury eventually will be found which will agree with the judge's idea of who should be the successful party. A jury trial has then been had. Justice has triumphed. The Constitution has been enforced. I leave such reasoning to those who are willing to accept it.

I admit that the instant majority opinion merely follows certain other decisions which have been promulgated by this court from time to time, which in themselves are, in my judgment, grossly erroneous on this point. See the decisions cited therein, and also Nichols Transfer & Storage Co. v. Lumpkin, 180 Okla. 350, 69 P.2d 640; Bailey v. Sisson, 180 Okla. 212, 69 P.2d 65, to both of which I dissented. We are gradually getting deeper in error, and I do not agree with those who realize the error but are of the opinion that the best solution is a statutory enactment. As I view it, a court always has the inherent power to correct its erroneous rules of law. This court should exercise that public duty.

In 1936 we highly commended a trial judge for refusing to grant a new trial though he stated that he did not personally agree with the verdict, while in 1905 the court reversed a trial judge for doing exactly the same thing. Compare Shabino v. Dolese Bros. Co., 174 Okla. 69, 49 P.2d 686, with Yarnell v. Kilgore, 15 Okla. 591, 82 P. 990. There are several lines of decisions on the question. The Yarnell Case, rendered by a divided court, was the initial flight into the "conscience" realm. It remained dormant for a number of years and has lately been revived and cited.

Throughout the years it has repeatedly been criticized, "explained," and dissented from, never overruled, but often ignored. It should be expressly overruled. The good that may be accomplished by the practice therein permitted is negligible by the side of the oppression thereby made possible. Furthermore, the Oklahoma Constitution had not then been adopted.

Our sworn duty now is to uphold and defend the Constitution. That Constitution, we have often said, **"guarantees"** the right of trial by jury. It is fundamental that a right permitted to be exercised in form only, and not in substance, is the equivalent of no right at all. It is that very right, of trial by jury, which was the inception of the rule that where there is any evidence **reasonably** tending to support a verdict this court will not reverse the same for lack of evidence. Then, if this court will not reverse such a verdict, even though we may not be in sympathy with it, where does the trial judge ac-

quire so much more power than we have? The same Constitution is binding on him. I apprehend that the answer will be made that he was there, at the trial, and had the opportunity to observe the witnesses. But we have always held that the relative credibility of witnesses is for the **exclusive** determination of the **jury,** and we have even held, and uniformly so, that a remark of the trial judge indicating to the jury his belief as to the relative credibility of witnesses constitutes reversible error. Where is the consistency in this? Why reverse him for indicating that he believes a witness credible or incredible, and yet affirm him for **entering judgment** according to the same belief, in manifest opposition to the jury's appraisement of the witness's credibility? Is it not apparent that in the latter case he has invaded the province of the jury far more deeply than in the former case?

I realize that the prime duty of the trial judge is to see that justice is done. I would not deny him the right judicially to weigh the evidence in the case against the verdict returned by the jury, to weigh it according to applicable rules of law, in keeping with a legal discretion, a discretion exercised and guided by the principles of law, so that same is subject to review. In such a case, if the verdict were so greatly at variance with the evidence as to make it appear arbitrary, then it could truthfully be said that there was no evidence **reasonably** tending to support the verdict, and that the order granting the new trial should be affirmed. But when the situation is reversed, as in this case, and the preponderance of the evidence is very patently with the verdict, then I say that the verdict is "reasonably" sustained by the evidence, and that the trial judge has abused his **legal** discretion in setting that verdict aside on the sole ground that he does not agree with it. **Otherwise there is no dependable right of trial by jury.** I recognize a clear distinction between the exercise of judicial discretion and the indulgence of an individual conscience. Having these views, I cannot concur in the majority opinion, and therefore dissent.