George V. DODSON, Appellant,

v.

HENDERSON PROPERTIES, INC., Travis Henderson, C.A. Henderson, and Southwest Property Management Corp., Individually and d/b/a/ Brookwood Joint Venture, a partnership, Appellees.

No. 60876.

Supreme Court of Oklahoma.

Sept. 17, 1985.

Rehearing Denied Nov. 5, 1985.

Thomas A. Wallace, Oklahoma City, for appellant,

Micky Walsh, Oklahoma City, for appellees.

ALMA WILSON, Justice.

The plaintiff, George Dodson, sustained injuries rendering him quadripartite when he executed a "jack-knife" dive into 36 inches of water while a guest at an apartment complex swimming pool. Asserting negligence on the part of the corporate owners and operators of the apartment complex for failure to close the pool while it was under construction for repairs, and allegedly maintaining the deceptive appearance that the shallow end was the deep end of the pool, George Dodson brought this suit seeking damages occasioned from his paralyzing injuries.

The case was tried to a twelve member jury. After a lengthy trial over a period of five days, the jury returned a verdict. The jury verdict was unanimous. The jury found Dodson's total damages to be $3,000,000. The jury further found the defendants 75% negligent and Dodson 25% negligent, resulting in a final verdict in favor of Dodson in the net amount of $2,250,000.

The defendants filed simultaneous post-trial motions, including Motion for Judgment Notwithstanding the Verdict, Motion for Remittitur and Motion for New Trial. On defendants' urgings that the jury's assessment of damages was excessive, the trial court ordered that unless Dodson agreed to a remittitur amounting to $1,250,000, within 15 days, the defendants' Motion for New Trial would be sustained. Dodson refused to remit the jury verdict.

This appeal is prosecuted from the trial court's subsequent order setting aside the verdict of the jury as excessive and granting defendants a new trial by reason of Dodson's refusal to file a certificate agreeing to a remittitur of the jury verdict. Dodson contends that, based upon the evidence, the damages awarded by the jury are not excessive; and that the jury was activated not by passion and prejudice, but by proof. Defendants' urge that the trial judge was within his judicial discretion in granting them a new trial.

The function of a motion for new trial is to open judicial inquiry into errors occurring during the conduct of trial proceedings; its office is to invoke the power of the trial court to correct and cure its own errors. *Conyers v. Conyers*, 386 P.2d 633 (Okl.1964). However, a trial court's exercise of discretion to grant a new trial must be a *sound legal discretion* in accordance with recognized principles of law, rather than an arbitrary discretion exercised at will. *Hansen v. Cunningham*, 285 P.2d 432 (Okl.1955). Moreover, it is not within a court's province to substitute its own judgment for that of the jury and a trial court's order sustaining a motion for new trial will be reversed where it is based, to the exclusion of all others, on a wrong, incorrect or insufficient reason or ground

and there appears to be no tangible, substantial, or reasonably certain basis for concluding that if the cause were retried, the result would be different. *Aldridge v. Patterson*, 276 P.2d 202 (Okl.1954). Ostensibly, every jury trial involving adversarial issues could become the object of attack by opposing litigants disgruntled by an adverse verdict and thus inferring jury bias against them. A trial court, however, may not indulge in such speculation as grounds for setting aside jury verdicts and the judgments based thereon. Title 12 O.S.1981 § 651 provides the following pertinent grounds for granting a new trial:

> A new trial is a reexamination in the same court, of an issue of fact, or of law, either or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party:
>
> . . . . .
>
> Second. Misconduct of the jury or prevailing party.
>
> . . . . .
>
> Fourth. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.
>
> . . . . .

In determining whether the jury verdict in this case can be said to be the result of prejudicial misconduct or so excessive as to be contrary to the law and the evidence, we must look to the entire record and consider all the facts and circumstances shown therein. *See, Hansen v. C.M. Cunningham*, 285 P.2d 432 (Okl.1955).

 The law is well established in this jurisdiction that the issue of damages in a personal injury action is left to the jury's judgment after hearing all the evidence. The judgment of the jury is subject to correction by a court *only* if the jury were activated by prejudice or guilty of abuse and passionate exercise. *Walker v. St. Louis-San Francisco Railway Company*,

646 P.2d 593 (Okl.1982). Before a jury verdict can be set aside as excessive, it must strike mankind, at first blush, as being beyond all measure unreasonable and show the jury to have been activated by passion, partiality, prejudice or corruption. *Austin Bridge Company v. Christian*, 446 P.2d 46 (Okl.1968). From a thorough review of the full record, including the pleadings, the trial and appellate briefs, the written transcript and audio/visual recordings and exhibits, we believe that passion, partiality, prejudice or corruption cannot be attributed to the jury in this case without engaging in gross speculation. If the damages were unsupported by the evidence, then there might be some basis for concluding that in some manner or another, the jury was prejudiced against the defendants, but this is not the case. Here, the court had no standard upon which to base its finding of excess and we find nothing to impugn the presumption that the jury discharged its function impartially and conscientiously upon the evidence, the facts and the law.

The five-day trial of the case began on June 14, 1983. The trial court personally conducted a careful and thorough voir dire of the prospective jurors, followed by a detailed examination by counsel for each of the parties and detailed explanations by the trial court. Final composition of the twelve-member jury consisted of (1) a part-time sales clerk (husband employed by a state agency); (2) a waitress; (3) a housewife (husband retired postal inspector); (4) a retired insurance underwriter (wife employed at a military base); (5) a nurse; (6) a warehouse manager; (7) a housewife (husband a federal contract officer); (8) a housewife (husband a life insurance underwriter); (9) a housewife (husband a mail handler); (10) a jet engine assembler; (11) a secretary; and (12) a machine shop owner. After qualifying to try this case, and after being sworn to well and truly try the matters about to be submitted to them, and to render a true verdict according to the law and the evidence, these jurors proceeded to hear the trial of this case.

The jury heard evidence establishing that the defendants, C.A. Henderson, Henderson Properties, Inc., and Southwest Property Management Corporation, built an apartment complex in Oklahoma City capable of housing 2,000 tenants. The complex facilities included nine swimming pools. Rental at this complex entitled the tenant and the tenant's guest, if any, to use the swimming pools.

Glen Torres and David Hayes became bona fide tenants at defendants' apartment complex in 1979. They remained so at all pertinent times herein. On Saturday, May 17, 1980, George Dodson was the guest of the two boys, having left his hometown a short time earlier to look for a job in the city. That Saturday, the three friends decided to go swimming after playing eighteen holes of golf. They returned to the apartment, donned swimming apparel, and proceeded to a complex swimming pool with a pitcher of daiquiris. The entrance gate at the southwest corner (deep end) of the pool was open and other young adults were already at the pool although the testimony revealed that repairs to the pool had begun to be implemented earlier that week. Dodson testified that in addition to the alleged improper placement of the entrance gate at the deep end of the pool, the pool lacked required depth markers and that the removal of cement blocks during the repair process gave him the impression that a diving board had been removed from what, under customary practice in the swimming pool industry, would have been the deep end of the pool. Upon entering the pool area, the trio sat down and within a period of approximately five minutes, George Dodson stood up and executed the ill-fated dive into what he believed to be the deep end of the pool. George Dodson immediately lost sensation in his arms and legs and was unable to re-emerge. A piece of Dodson's scalp floated to the surface of the water. He was then lifted from the water on a chaise lounge and taken to a hospital. The physician who attended Dodson at the hospital emergency room reported no evidence of alcohol impairment. Two days later, Dodson was transferred to another hospital where he remained for another twenty-one days. Dodson's neuro-surgeon, Dr. P., testified to significant loss of function in both Dodson's upper and lower extremities as well as loss of normal bowel and bladder control. Dr. P. diagnosed Dodson as having sustained quadriparesis due to contusion or bruising of the spinal cord in the cervical region. This paralysis will require him to live a sedentary existence for the remainder of his life. Dodson's future life expectancy was shown to be 45 years. Testimony was that the only part of Dodson's body that functions for the sake of employment is his mouth, so that he might be able to become an interpreter or something similar which would require him to think and talk, rather than to act. As a direct result of his quadriparesis, Dodson submitted evidence of damages in the following amounts through the testimony of a consulting economist and documentation:

| | |
|---|---|
| Present Medical | $ 45,751.79 |
| Future Medical | 1,291,847.64 |
| Loss of employment income | 1,411,855.34 |
| Loss of employment benefits, pension, profit sharing & retiremt. | 211,778.30 |
| Handicapped Equipped Vehicle maintenance and operation | 344,492.70 |
| Handicapped Vehicular replacement | 103,395.00 |
| Total Economic Loss | $3,409,120.77 |

Dodson additionally asked for $1,401,600.00 as compensation for pain and suffering and disfigurement. The defendants did not controvert the medical evidence of Dodson. Neither did they offer evidence to dispute the economic loss of Dodson.

At the close of the evidence, the trial court properly instructed the jury. The trial court refused to instruct the jury to consider awarding Dodson punitive damages. Following five hours of deliberation, the jury returned its unanimous verdict in an amount less than the total economic loss for which evidence was introduced. We find the judgment on jury verdict free from reversible error. This Court, in *Bishop's Restaurants, Inc. of Tulsa v. Womble*, 355 P.2d 560 (Okl.1960), stated:

"Where it appears that the defeated litigant did not present valid reason for a new trial, and the record is barren of sufficient legal grounds for ordering a reexamination of fact issues, this Court will hold that none existed and the trial court abused its discretion in sustaining the motion".

The record as a whole reveals neither error of law, nor prejudicial misconduct by the parties, the court, witnesses or counsel which would serve as grounds for granting a motion for a new trial. We agree with the trial court's own opinion that it made no error during the trial of this case.

A trial judge may not sit as a thirteenth juror. It matters not that the trial court or this Court might or might not have reached a different conclusion as to the amount of damages suffered by reason of the injuries received. A court may not substitute its judgment for that of the jury in the exercise of its function as a fact finding body. In so doing, the trial court in this case abused its discretion. Were a trial court permitted unbridled prerogative to substitute its opinion for that of a jury, it would be tantamount to a partial abrogation of the right to trial by jury. The order setting aside jury verdict and granting a new trial is REVERSED. JURY VERDICT REINSTATED.

SIMMS, C.J., and HODGES, LAVENDER, HARGRAVE, OPALA and KAUGER, JJ., concur;

DOOLIN, V.C.J., and SUMMERS, J., disqualified.