**Mary L. CLARK and Emmett Clark, Appellees,**

v.

**James H. BEARDEN, M.D., Appellant.**

**No. 81449.**

Supreme Court of Oklahoma.

June 27, 1995.

Rehearing Denied Sept. 18, 1995.

Glenn R. Beustring, and E. Diane Hinkle, Glenn R. Beustring & Associates, Tulsa, for appellees.

Joseph A. Sharp, John H.T. Sheridan, and Karen M. Grundy, Best, Sharp, Holden, Sheridan, Best & Sullivan, Tulsa, for appellant.

WATT, Justice.

This is an appeal from an order granting a new trial to plaintiffs, Mary L. Clark, and Emmett Clark, on the issue of damages only. The jury had returned a unanimous verdict for $41,083.33 in favor of the Clarks' in a suit in which the Clarks had sued defendant, James H. Bearden, M.D., for malpractice. The Clarks had sued for more than $900,000.

## FACTS AND PROCEDURAL BACKGROUND

Mary Clark was 75 years old in October 1988 when she began suffering from stomach problems and rectal bleeding, and experienced continuing problems with a hernia that would not heal. Mrs. Clark's doctor, Dr. Dancer, feared that Mrs. Clark might have cancer of the colon and arranged for Dr. Bearden to perform a colonoscopy.[1] Dr. Bearden determined that Mrs. Clark did not have cancer, but encountered a blockage and ended the procedure. Mrs. Clark's colon was apparently perforated during the procedure, and Dr. Lockhart, a surgeon at St. Francis Hospital in Tulsa, performed emergency surgery to repair a hole in Mrs. Clark's colon.

1. A colonoscopy is the visual examination of the inner surface of the colon by means of an instru-ment made up of flexible tubing, called a colonoscope.

In 1990 Mrs. Clark and her husband Emmett Clark sued Dr. Bearden for medical malpractice. The case was tried for five days in 1993. At trial the Clarks presented medical and hospital bills totaling $74,404.40. The charges relating to Mrs. Clark's perforated colon amounted to approximately $33,500.00. The additional charges arose from a 1989 surgery Mrs. Clark had to remove her sigmoid colon, plus treatment in 1990, and hospitalization in 1992, for respiratory problems and a liver abscess. Dr. Lockhart, who repaired Mrs. Clark's colon in 1988, and removed her sigmoid colon in 1989, testified at trial that neither Mrs. Clark's sigmoidectomy, nor her respiratory and liver problems, had been made worse by her perforated colon.[2] The jury returned a unanimous verdict for $41,083.33.

During voir dire of the jury panel, Dr. Bearden's counsel had asked the members of the jury panel if they could set aside any tendency to act on preconceived notions rather than the evidence and the law. He used the trial court as an example of how to do this:

> For example, Judge Harris probably has a family doctor that she's very pleased with and thinks he can do no wrong, but she has to take that aside. On the flip side, Judge Harris, her husband is a plaintiff lawyer. That's another thing pulling the other way, but Judge Harris has to take that aside and set it aside and be a fair judge, and she is.

The Clark's counsel did not object to the foregoing statement.

**2.** When asked to confirm that the "sigmoidectomy that was done later in February of '89 had nothing to do with the ruptured cecum [colon]," Dr. Lockhart said "Correct." When asked if "after the October of '88 procedure, I assume she became perfectly healthy for doing the sigmoidectomy prior to February of 1989?" Dr. Lockhart answered "Yes." Dr. Lockhart also confirmed that he would not have done the February 1989 surgery if Mrs. Clark had lung problems. When asked whether Mrs. Clark's liver abscess, which developed thirteen months after the October 1988 surgery, could have been the result of that surgery, Dr. Lockhart testified, "I would find it hard to believe that that could have happened.... I don't recall a clinical case where something like this happened that far away from the incident that could have potentially caused the liver abscess."

The Clarks moved for a new trial on the grounds that the verdict was inadequate and not sustained by sufficient evidence under 12 O.S.1991 § 651 Fourth and Sixth.[3] The Clarks did not raise as error Dr. Bearden's counsel's voir dire statement to the jury panel in their motion for new trial. The trial court granted the Clark's motion for new trial on the following grounds: (1) "I think the facts here support a finding that the inadequacy of the verdict is unreasonable and outrageous and reflects the jury's passion and partiality and prejudice" because of Dr. Bearden's counsel having "told the jury that the Judge's husband was a plaintiff's lawyer;" (2) "Further, the inadequacy of the damages awarded to the plaintiff leads this Court to believe that I did not properly instruct the jury as to the duties with regard to finding damages;" and (3) "I further believe that I confused them with incorrect verdict forms."

The Court of Appeals affirmed the trial court's order, and we granted certiorari on April 6, 1995.

## ISSUE

Did the trial court abuse its discretion by concluding that the jury's verdict was motivated by passion and prejudice against the Clarks and that improper instructions and verdict forms confused the jury?

We hold that the record does not support the trial court's conclusions and that the trial court did abuse its discretion.

**3.** In material part, 12 O.S.1991 § 651 provides:

> A new trial is a reexamination in the same court, of an issue of fact, or of law, either or both, after the verdict by a jury.... The former verdict ... shall be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party:
>
>     *    *    *    *    *    *
>
> Fourth. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.
>
>     *    *    *    *    *    *
>
> Sixth. That the verdict ... is not sustained by sufficient evidence, or is contrary to law.

## DISCUSSION

In deciding whether the trial court abused its discretion we assume that Dr. Bearden's counsel's statement that the trial court's husband was a plaintiff's lawyer was error, although the Clarks did not object to the statement. This does not end the inquiry, however. In order to support a new trial or reversal, misconduct of counsel must be shown to have substantially prejudiced the jury "to the material detriment of the party complaining." *Oklahoma Turnpike Authority v. Daniel*, 398 P.2d 515, 518 (Okla.1965). The inadequacy or excessiveness of an award, and the passion and partiality inhering in it, must be so clear "as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous." *Park v. Security Bank and Trust Company*, 512 P.2d 113, 116 (Okla.1973), and *Fleming v. Baptist General Convention of Oklahoma*, 742 P.2d 1087, 1098 (Okla.1987), both quoting from *Austin Bridge Co. v. Christian*, 446 P.2d 46, 49 (Okla.1968).

The Clarks rely on *Shreve v. Cornell*, 182 Okla. 193, 77 P.2d 1 (1938). There we held that "unless the verdict of the jury meets the responsive and affirmative approval *and conscience* of the court, it should not stand and the same should be set aside and a new trial granted." [Emphasis added.] 77 P.2d at 2. We also observed in *Shreve* that we will reverse a trial court for granting a new trial if "the trial court has acted arbitrarily or has clearly abused its discretion." *Id.* Although we have not heretofore expressly overruled *Shreve,* we have renounced the "conscience" rule. In *Montgomery v. Murray*, 481 P.2d 755, 760 (Okla.1970). we said:

> By renouncing the so-called "conscience" rule [citations omitted] we have recognized that a trial court's power to grant new trials is limited by the bounds of judicial discretion; and thus, in effect, have renounced the statement in *Spence v. Park*, [207 Okla. 215, 248 P.2d 1000 (1952) ] to the effect that a trial court '... may grant a new trial on account of any error or misconduct which in the conscience of the court is sufficient justification for this action.'

A trial court's order granting a new trial must have some record support. "If allowed the unbridled substitution of his own opinion for that of the jury, [a trial court] could in effect partially abrogate both our jury system and right of appeal by repeatedly setting aside successive verdicts and granting new trials until a verdict was returned that conformed to his own personal idea of an adequate recovery." *Aldridge v. Patterson*, 276 P.2d 202, 204 (Okla.1954). To the extent that it can be interpreted to allow a trial court to substitute its own judgment for that of a jury as a matter of "conscience" where there is evidence in the record to support the jury's verdict, and there is no clear showing that the jury's verdict was unreasonable and outrageous beyond all measure, *Shreve v. Cornell*, 182 Okla. 193, 77 P.2d 1 (1938) is expressly overruled.

The Clarks have failed to show that Dr. Bearden's counsel's misconduct generated partiality and prejudice in the jury that caused them to return an unreasonable and outrageous verdict. The jury was evidently not hostile to the Clarks, as it returned a verdict for them. The Clarks claim Dr. Bearden stipulated that the $74,404.40 in damages they proved were all compensable. This was not the case. Dr. Bearden waived identification and authentication of the Clarks' hospital and medical bills, but denied that all were the result of Mrs. Clarks perforated colon. Dr. Lockhart's testimony clearly supported Dr. Bearden's claim—and the jury's apparent finding—that Dr. Bearden should not be responsible for Mrs. Clark's later sigmoidectomy, lung, and liver problems. Dr. Bearden's lawyer argued this position to the jury without objection from the Clarks. The jury's verdict was supported by the evidence, it was neither unreasonable nor outrageous.

A clear showing of prejudice is required before we will allow a trial court to set aside a jury verdict, or set it aside ourselves, for excessiveness or inadequacy of damages. Two cases show that the Clarks have failed to make such a showing here: *Aldridge v. Patterson*, 276 P.2d 202 (Okla.1954); and *Dodson v. Henderson Properties, Inc.*, 708 P.2d 1064 (Okla.1985).

In *Aldridge,* we reversed the trial court for having granted the plaintiffs a new trial. Plaintiffs sued for $16,955.65 arising out of the wrongful death of their 10 year old son but the jury returned a verdict for only $750. The boy had been struck and killed by defendant's car. The trial court granted plaintiffs' motion for new trial on the ground that the jury, because it heard evidence that the Highway Patrol and the County Attorney investigated the accident, had learned that the defendant was not criminally prosecuted for misconduct in the accident. This, reasoned the trial court, led to the "grossly inadequate" verdict returned by the jury. We agreed that the verdict was quite low, and that the evidence of the investigation was irrelevant. Nevertheless, we reversed the trial court's order granting a new trial because plaintiffs made no clear showing that the irrelevant evidence had prejudiced them in the minds of the jury, and because there was evidence to support the verdict. We did so because we were unwilling to permit grounds for reversal "to be fabricated through the process of such speculation." 276 P.2d at 205.

In *Dodson,* we reversed the trial court for granting the defendant a new trial after the jury had returned a $3,000,000 verdict for the plaintiff. The plaintiff had dived into an apartment complex's swimming pool, struck his head, and was paralyzed. After analyzing the record, and concluding that the evidence supported the verdict, we quoted from *Bishop's Restaurants, Inc., of Tulsa v. Whomble,* 355 P.2d 560, 564 (Okla.1960): "Where it appears that the defeated litigant did not present valid reasons for a new trial, and the record is barren of sufficient legal grounds for ordering a reexamination of fact issues, this Court will hold that none existed and that the trial court abused its discretion in sustaining the motion." 708 P.2d at 1068. We also held in *Dodson:*

> A trial judge many not sit as a thirteenth juror. It matters not that the trial court or this court might or might not have reached a different conclusion as to the amount of damages suffered by reason of the injuries received. A court may not substitute its judgment for that of the jury in the exercise of its function as a fact finding body. In so doing the trial court in this case abused its discretion.

*Id.*

Although Dr. Bearden's counsel's voir dire statement that the trial court's husband was a plaintiffs' lawyer was improper, we see no reasonable basis for the trial court's conclusion that counsel's remark prejudiced the jury against the Clarks. The evidence supports the verdict the jury returned. In granting the Clarks a new trial the trial court improperly applied its subjective view of what was just. This was reversible error.

We have reviewed the trial court's damages instructions and verdict forms. They are standard Oklahoma Uniform Jury Instruction forms, of the kind our Order in SCAD–93–3 of February 25, 1993 requires trial courts to use. The Clarks have not suggested how the trial court's use of OUJI instructions and verdict forms could have prejudiced their rights and we see nothing in the instructions or verdict forms that would support the trial court's conclusion that they did so.

The record supports neither the trial court's conclusion that passion and prejudice inhered in the jury's verdict, nor its finding that the jury was misled by the damages instructions and verdict forms.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; ORDER GRANTING NEW TRIAL REVERSED AND JUDGMENT ON THE VERDICT REINSTATED.

LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES and OPALA, JJ., dissent.