2009 OK CIV APP 35

**Howard CLAY, Personal Representative of the Estate of Dortha Ann Clay, Plaintiff/Appellee,**

v.

**CHOCTAW NATION CARE CENTER, LLC d/b/a Choctaw Nation Nursing Home, Defendant/Appellant.**

**No. 104,805.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 11, 2008.

Rehearing Denied Jan. 16, 2009.

Certiorari Denied March 30, 2009.

Michael D. Parks, McAlester, OK, for Plaintiff/Appellee.

Douglas M. Borochoff, Christopher D. Wolek, Eddie L. Carr, Oliver L. Smith, Gibbs, Armstrong, Borochoff, Mullican and Hart, P.C., Tulsa, OK, for Defendant/Appellant.

DOUG GABBARD II, Presiding Judge.

¶1 In this wrongful death action, Defendant, Choctaw Nation Care Center, LLC d/b/a Choctaw Nation Nursing Home (Nursing Home), appeals the trial court's grant of a motion for new trial filed by Plaintiff, Howard Clay, the personal representative of the estate of his deceased mother, Dortha Ann Clay (Mrs. Clay), after a jury found Nursing

Home negligent but awarded zero damages.[1] We affirm.

## FACTS

¶ 2 Mrs. Clay was admitted to Nursing Home in June 2002. She was 76 years old and suffered from Alzheimer's disease. After two months, she sustained a fall and broke her hip and nose. While bedfast, she developed severe pressure sores which became infected. She died a few weeks after her fall.

¶ 3 Plaintiff's father filed a negligence action for Mrs. Clay's estate, and Plaintiff was later substituted as the party plaintiff. Nursing Home denied being negligent. It asserted Mrs. Clay's death resulted from pre-existing conditions and natural decline, and that her fall and hip fracture were unpreventable.

¶ 4 The case came on for jury trial in March 2007. Both sides presented substantial evidence. Plaintiff's evidence indicated Nursing Home knew Mrs. Clay was at risk for a fall and failed to properly monitor her. Plaintiff's evidence further indicated Mrs. Clay died due to sepsis from decubitus ulcers caused by Nursing Home's failure to properly reposition and otherwise care for her. Nursing Home's evidence showed Plaintiff's mother suffered from Alzheimer's and other diseases, and had a history of smoking. Nursing Home asserted that these underlying health conditions, and the natural progress of diseases, caused her death. Nursing Home also presented evidence that it took precautions to prevent Mrs. Clay from falling.

¶ 5 Plaintiff presented evidence of the following damages: a) a $3,250 medical bill for the surgery on Mrs. Clay's fractured hip; b) a $499.50 ambulance bill; c) a $17,114 hospi-

tal bill; and d) a $3,637 funeral home bill. Plaintiff also presented evidence of his mother's extensive pain and suffering. In that regard, Mrs. Clay's daughter testified that, after her mother returned from hip surgery, her condition deteriorated, she stayed in bed on her back, with a restraint, and "moaned and whined and cried as if she was in pain." She also testified that she observed a huge ulcer on Mrs. Clay's body which caused her mother to act "as if she was in extreme pain . . . all she was doing was crying and moaning." Nursing Home did not controvert Plaintiff's evidence regarding damages.[2]

¶ 6 The jury received two verdict forms, a blue form for Plaintiff and a pink form for Nursing Home. As to the blue form, the trial court instructed the jury:

If you find that the occurrence with which this lawsuit is concerned was directly caused by the negligence of the Defendant, then you shall use the Blue Verdict Form and find in favor of Plaintiff. If you so find, Plaintiff is entitled to recover the full amount of any damages which you may find Plaintiff has sustained as a result of the occurrence.

¶ 7 The trial court also instructed the jury that it should use the pink form if it found Plaintiff had failed to prove Nursing Home acted negligently, or that the occurrence with which the lawsuit was concerned was not caused by its negligence. The jury returned a blue verdict form, signed by 11 members thereof, finding in favor of Plaintiff, but assessing damages at "0." The trial court entered judgment for Plaintiff in the sum of $0.00.

¶ 8 Plaintiff then filed a motion for new trial on the issue of damages (including punitive damages), asserting the verdict was inconsistent with the evidence since Nursing

1. Plaintiff has filed a motion to dismiss Nursing Home's appeal on the ground that its notice of completion of record and its appellate brief were approximately five months late. Nursing Home admits that it was late, asserting that it mistakenly noted on its original petition in error that this was an appeal from a final order, instead of an appeal of an interlocutory order appealable by right under Supreme Court Rule 1.40(d), and therefore docketed the wrong dates on its own calendar. Although we find no excuse for Nurs-

ing Home's conduct, we reluctantly deny the motion to dismiss in order that the parties may have a decision on the merits.

2. Nursing Home admits in its appellate brief that "[t]he contested issue in this case was whether Mrs. Clay's death resulted from improper care by Defendant or whether her death was due to her underlying health condition and disease processes."

Home had contested its negligence and liability, but had not argued or presented evidence contradicting the damages sustained. The trial judge stated that this was the "strangest verdict" he had seen in 30 years, and "they [the jury] found for the Plaintiff, there was evidence of damages, there was evidence of pain and suffering, I don't see how they could have awarded zero." The trial court granted a new trial "pursuant to 12 O.S. § 651 ¶¶ 4, 6, because the jury's verdict is inconsistent." Nursing Home now appeals.

## STANDARD OF REVIEW

¶ 9 A trial court has wide discretion in deciding a motion for new trial. *Sligar v. Bartlett,* 1996 OK 144, ¶ 13, 916 P.2d 1383, 1387. A trial court's order granting a new trial will not be reversed on appeal unless the record clearly shows that the trial court either erred on a pure and unmixed material question of law or acted arbitrarily or capriciously. *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 144–45. In reviewing the grant of a new trial, we indulge "every presumption in favor of the correctness of the trial judge's ruling." *Id.,* 898 P.2d at 144. If a new trial is granted by the same judge who tried the decision, the case will not be reversed "unless it is shown beyond all reasonable doubt that the trial court materially and manifestly erred." *Strubhart v. Perry Mem'l Hosp. Trust Auth.,* 1995 OK 10, ¶ 16, 903 P.2d 263, 269.

## ANALYSIS

¶ 10 Although a trial court has wide discretion in granting a motion for new trial, it does not have unfettered authority to do so. Generally, its authority is limited by 12 O.S.2001 § 651, which provides, in part:

A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:

. . .

4. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

. . .

6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law. . . .

¶ 11 In granting a new trial on grounds of inadequate damages, insufficient evidence, or otherwise, a trial court may not substitute its own judgment for that of the jury or act as a "thirteenth juror." *Dodson v. Henderson Props., Inc.,* 1985 OK 71, ¶ 11, 708 P.2d 1064, 1068. It is an abuse of discretion for a trial court to grant a new trial when a jury's verdict is supported by competent evidence. *Fletcher v. Meadow Gold Co.,* 1970 OK 135, 472 P.2d 885; *Walker v. St. Louis–San Francisco Ry. Co.,* 1982 OK 25, 646 P.2d 593. In overruling earlier caselaw implying that a new trial could be granted when a verdict violated a trial court's "conscience," the Supreme Court stated:

A trial court's order granting a new trial must have some record support. "If allowed the unbridled substitution of his own opinion for that of the jury, [a trial court] could in effect partially abrogate both our jury system and right of appeal by repeatedly setting aside successive verdicts and granting new trials until a verdict was returned that conformed to his own personal idea of an adequate recovery." *Aldridge v. Patterson,* 276 P.2d 202, 204 (Okla.1954). *To the extent that it can be interpreted to allow a trial court to substitute its own judgment for that of a jury as a matter of "conscience" where there is evidence in the record to support the jury's verdict, and there is no clear showing that the jury's verdict was unreasonable and outrageous beyond all measure, Shreve v. Cornell,* 182 Okla. 193, 77 P.2d 1 (1938) is expressly overruled.

*Clark v. Bearden,* 1995 OK 71, ¶ 9, 903 P.2d 309, 312 (emphasis added).

¶ 12 In its first two propositions of error, Nursing Home asserts that there was nothing inherently inconsistent with the zero damage verdict and the trial court improperly acted as a "thirteenth juror" in granting a new trial "based on nothing more than pure speculation and its own subjective view of what it thought was just."

¶ 13 In *Burkett v. Moran*, 1965 OK 165, 410 P.2d 876, the Oklahoma Supreme Court addressed a case somewhat similar to the one at bar. There, the plaintiff sustained a whiplash injury in an auto accident. However, although the jury found in favor of the plaintiff and awarded damages for repairs, medical bills, and lost wages, it did not award damages for pain and suffering despite the plaintiff's "uncontradicted evidence" of same. In reversing, the Supreme Court stated:

> Under the *uncontradicted evidence*, if defendant was liable to plaintiff at all, plaintiff was entitled to recover damages for pain and suffering.

*Id.* at ¶ 18, 410 P.2d at 878–79 (emphasis added).

¶ 14 The *Burkett* rule was subsequently followed in other Oklahoma cases, including *Witt v. Martin*, 1983 OK CIV APP 33, 672 P.2d 312. In *Witt*, the plaintiffs sued for damages arising out of an automobile collision that occurred while they were occupants of a semitrailer truck. Lee Way, their employer, intervened seeking to recoup monies that it had expended for their medical treatment. The jury found for the plaintiffs, but awarded damages to only Lee Way. The Court of Civil Appeals held that the verdict was inconsistent, finding:

> "[I]n making the Lee Way award the jury instructionally had to find that it was necessary for plaintiffs to undergo substantial medical treatment and that the compensation court awards for disability secondary to the collision were reasonable and proper. In other words ... the jury had to find that both plaintiffs were injured in the wreck, had suffered pain and had some consequential residual disability."

*Id.* at ¶ 34, 672 P.2d at 317; *see also G.H.K. Co. v. Janco Inv. Inc.*, 1987 OK CIV APP 68,

748 P.2d 45 (holding that the appellant presented no evidence to dispute the reasonableness of the costs incurred in drilling a well, or in the amount of damages sought by the appellee). *Burkett* and its progeny teach that when liability is established, and there is compelling *uncontroverted evidence* of damages, a zero damage award is inconsistent.

¶ 15 A different result is reached where there is *conflicting evidence* regarding damages, or where the evidence is not credible. Thus, in *Baker v. Locke Supply Co.*, 1987 OK 27, 736 P.2d 155, after a jury found for the plaintiff on the issue of liability in an automobile negligence case, but assessed zero damages, the Supreme Court affirmed, finding no inconsistency because "the record contains evidence, albeit conflicting, that appellant [plaintiff] did not sustain any compensable injury from the accident." *Id.* at ¶ 8, 736 P.2d at 157; *see also Higginbotham v. Hartman*, 1970 OK 25, 465 P.2d 478; *Wright v. Central Oklahoma Milk Producers Ass'n*, 1973 OK 15, 509 P.2d 464; and *Wingerter v. Maryland Cas. Co.*, 313 F.2d 754 (5th Cir. 1963).

¶ 16 In the present case, once the jury found liability in Plaintiff's favor, it was required by the instructions to assess "the full amount" of any damages which Plaintiff sustained as a result of the "occurrence." Plaintiff presented compelling and persuasive evidence of that damage, and that evidence was not controverted. Although Nursing Home attempts to offer alternate explanations for the zero damage verdict—i.e., that the jury either determined Mrs. Clay's death was not due to its negligence but rather as a natural disease process associated with Alzheimer's, or Nursing Home only committed technical statutory violations under the Oklahoma Nursing Home Care Act, such as record-keeping rules based on a negligence *per se* theory that did not result in compensable damages—these explanations are contradicted by the jury's verdict that Nursing Home was negligent in causing Mrs. Clay's death.[3]

¶ 17 Accordingly, we conclude that the jury's zero damage verdict was not supported by reasonably competent evidence, was in-

---

**3.** *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 2003 OK 72, 77 P.3d 1042, on which Nursing Home relies, is distinguishable because the plaintiffs in that case "failed to show an essential element of their claim, i.e., damages." *Id.* at ¶ 17, 77 P.3d at 1048.

consistent with the compelling and uncontradicted evidence of Plaintiff's damage, and was inadequate as a matter of fact and law. We find no abuse of discretion in the trial court's order granting a new trial, and find no merit in Nursing Home's first two propositions.

¶ 18 In its third proposition, Nursing Home asserts that Plaintiff waived the right to file a new trial by failing to challenge the verdict when it was returned and before the jury was discharged, citing *Downum v. Muskogee Stockyards & Livestock Auction, Inc.,* 1977 OK 111, 565 P.2d 368.

¶ 19 *Downum* was a negligence case in which the jury found the plaintiff 45% negligent and the defendant 55% negligent, and assessed damages at $17,000. After the court entered a judgment in favor of the plaintiff for $9,350 (55% of $17,000), the plaintiff moved for a new trial, attaching an affidavit from the jury foreman stating that the jury instructions and verdict form were "a little confusing" and that the jury intended to award the Plaintiff the full $17,000. In affirming the trial court's denial of a new trial, the Supreme Court held that "[w]here a party fails to object to the form of the verdict before the jury is discharged, such failure constitutes a waiver of his objection." *Id.* at ¶ 5, 565 P.2d at 369.

¶ 20 Clearly, *Downum* is distinguishable from the present facts. Plaintiff does not claim that the jury verdict was "a little confusing." In fact, there was nothing irregular, incorrect, or confusing about the form of the verdict. The alleged error in this case does not involve the verdict's form, but its substance. Accordingly, we find no waiver.

## CONCLUSION

¶ 21 Because the verdict was inconsistent with the uncontroverted evidence, the trial court did not abuse its discretion in granting a new trial. Accordingly, its order is hereby affirmed.

¶ 22 AFFIRMED.

RAPP, C.J., and BARNES, J., concur.